STATE OF NEBRASKA EX REL. CREIGHTON UNIVERSITY, APPELLEE, v. HENRY D. SMITH, M.D., DIRECTOR OF HEALTH OF THE STATE OF NEBRASKA, ET AL., APPELLANTS.

353 N.W.2d 267

Filed June 22, 1984. No. 83-514.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson, for appellants.

Thomas R. Brown of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Creighton University (Creighton) sought a writ of mandamus compelling Dr. Henry D. Smith, Director of Health of the State of Nebraska (director), to receive and consider Creighton's "Contract Proposal" for cancer research to be conducted by Creighton. The Attorney General of the State of Nebraska (Attorney General) was a party to the suit because Nebraska law (Neb. Rev. Stat. § 84-905.01 (Reissue 1981)) requires the Attorney General to review rules and regulations of state agencies with respect to authority for and constitutionality of an agency's rules and regulations. The director and Attorney General (respondents) appeal the judgment of the district court for Lancaster County granting the requested writ of mandamus. We affirm.

As a university and a Nebraska nonprofit corporation, Creighton includes a college of medicine located in Nebraska. Before the Nebraska Legislature passed the statutes in question, Creighton's college of medicine was engaged in cancer research.

In 1981 the Nebraska Legislature enacted L.B. 506, Neb. Rev. Stat. §§ 81-637 through 81-640 (Reissue

1981) (act), authorizing grants and contracts for research of cancer and smoking diseases. L.B. 506 specified certain considerations of the director in making grants and contracts for the research of cancer and smoking diseases (§ 81-639), and required the director to adopt and promulgate rules and regulations governing an application for a grant or contract and providing criteria for acceptable programs of research.

When L.B. 506 was enacted, article VII, § 11, of the Nebraska Constitution did, and still does, provide in part: "Notwithstanding any other provision in the Constitution, appropriation of public funds shall not be made to any school or institution of learning not owned or exclusively controlled by the state or a political subdivision thereof . . . ."

After the Legislature passed the act the director sent to the Attorney General "RULES AND REGULATIONS GOVERNING GRANTS AND CONTRACTS FOR RESEARCH OF CANCER OR SMOKING DISEASE OR BOTH" for review pursuant to § 84-905.01. The rules and regulations submitted by the director contained provisions in part as follows:

CONTRACTS FOR RESEARCH

. . . .

007.01F  Contract shall mean an agreement between the Department and the contractor in which in return for consideration of funding, the contractor shall carry out a specified project or program in a specified manner.

. . . .

007.01H  Contractor shall mean the University of Nebraska or any other postsecondary institution having a college of medicine located in the State of Nebraska.

. . . .

011.01 . . . .  Any contract funds awarded shall be expended solely for the purposes for which the funds were awarded in accordance with the approved contract proposal or application and

budget, these Regulations, and the terms and conditions of the contract award.

. . . .

012.01 . . . . Contract funds may be utilized for the payment of the salaries of personnel participating in the contract project, but not for the payment of overhead. The Director may require that a time and effort report or reports be submitted by a contractor. Contract funds shall be subject to audit by the Department at the discretion of the Director.

In a written opinion dated December 4, 1981, the Attorney General disapproved the rules and regulations submitted by the director. In that opinion the Attorney General required that the application forms "ask whether the postsecondary institution having a college of medicine located in Nebraska is public or nonpublic," and referred to article VII, § 11, of the Nebraska Constitution.

A second draft of rules and regulations was submitted by the director to the Attorney General. This second draft included certain revisions, namely: "007.01H Contractor shall mean the University of Nebraska or any other *public* postsecondary institution having a college of medicine located in the State of Nebraska." (Emphasis supplied.)

In response to the director's second draft of rules and regulations, the Attorney General, in a written opinion dated January 7, 1982, stated that certain "changes should be made before we can approve" the director's second draft. Among the required changes was a specific "criterion" in a contract proposal or application—"that the applicant is the University of Nebraska or any other public postsecondary institution" with a medical college in Nebraska. The changes required by the Attorney General were made in the draft of rules and regulations finally adopted and promulgated by the director. On March 22, 1982, the Department of Health issued a "NOTICE OF EFFECTIVE RULES AND REGULA-

TIONS RE GRANTS AND CONTRACTS FOR RE-
SEARCH OF CANCER OR SMOKING DISEASE OR
BOTH'' which included the statement: ''During the
course of the review and approval process it was de-
termined by the Attorney General that contracts for
research can be awarded only to the University of
Nebraska or any other public postsecondary institu-
tion having a college of medicine located in the State
of Nebraska.''

On September 28, 1982, Creighton sent its contract
proposal entitled ''Breast Cancer Genetics in Ne-
braska.'' In his letter of November 18, 1982, the di-
rector notified Creighton that he was unable to ''file
and process'' the contract proposal submitted by
Creighton

> since it has been determined by the Attorney
> General that, pursuant to the provisions of Ar-
> ticle VII, [§ 11], of the Nebraska Constitution, a
> contract for cancer or smoking disease research
> cannot be made by the State of Nebraska with
> any school or institution of learning not owned or
> exclusively controlled by the State of Nebraska
> or a political subdivision thereof.

The director returned Creighton's contract proposal
and enclosed a copy of the Attorney General's opin-
ions dated December 4, 1981, and January 7, 1982.

Creighton filed its petition for a writ of
mandamus. In answer to Creighton's petition, the
respondents, among other matters, alleged that the
Nebraska Constitution prohibits appropriation of
state funds to private institutions and therefore,
insofar as L.B. 506 would permit appropriation of
state funds to private institutions, L.B. 506 was
unconstitutional.

At the hearing regarding the mandamus there was
testimony that Creighton had several people on its
staff to do cancer research under the supervision of
a physician whose ''subspeciality in cancer research
[was] in the genetics of cancer familial relation-
ships.'' If the state awards a contract for cancer

research, Creighton will supply additional and expanded cancer research "into the actual individual people in the State of Nebraska" regarding the incidence of breast cancer and "targeting familial or family relationships in breast cancer among people in the State of Nebraska." Creighton's cancer research would be focused on people in Nebraska.

After the hearing the district court issued a writ of mandamus which required (1) the director to "promulgate rules and regulations which will permit private postsecondary educational institutions having a college of medicine [in Nebraska] to qualify for contracts" described in the act; (2) the Attorney General "to consider L.B. 506, 1981 legislative session, constitutional insofar as it applies to private institutions designated" in the act; and (3) the Attorney General "not to reject any rules and regulations of the State Health Department [under the act] on the grounds" that the act violates article VII, § 11, of the Nebraska Constitution.

The question on appeal is whether article VII, § 11, of the Nebraska Constitution prohibits the state from contracting with a private university regarding research of cancer in the university's college of medicine. Because the answer to that question turns on construction of the Nebraska Constitution, it is necessary to review the function of a state constitution.

Initially, the people have all legislative power. Unlike the federal Constitution, a state constitution is not a grant of power but a limitation of power. The widely accepted doctrine is that a state legislature may generally pass any act, because legislative capacity not constitutionally inhibited or prohibited is retained in the people and exercised in the legislature by representatives of the people. See, *State ex rel. Meyer v. County of Lancaster*, 173 Neb. 195, 113 N.W.2d 63 (1962); *Earhart v. Frohmiller*, 65 Ariz. 221, 178 P.2d 436 (1947); *Americans United v.*

*Rogers*, 538 S.W.2d 711 (Mo. 1976); *Adams v. Bolin*, 74 Ariz. 269, 247 P.2d 617 (1952).

Nebraska recognizes that the Legislature has vast authority, limited only by the state and federal Constitutions. See, *Lenstrom v. Thone*, 209 Neb. 783, 311 N.W.2d 884 (1981); *Orleans Education Assn. v. School Dist. of Orleans*, 193 Neb. 675, 229 N.W.2d 172 (1975). Such authority extends to and includes a state's power to enter contracts. See *Butler v. Hatfield*, 277 Minn. 314, 152 N.W.2d 484 (1967). As an illustrative constitutional prohibition concerning a contract, Nebraska's Constitution, article III, § 16, provides in part:

> No member of the Legislature or any state officer shall have a conflict of interest, as defined by the Legislature, directly in any contract, with the state or any county or municipality thereof, authorized by any law enacted during the term for which he shall have been elected or appointed, or within one year after the expiration of such term.

Consequently, unless there is some constitutional provision to the contrary, the collective people, calling themselves the state, have the right to make contracts through their government acting pursuant to representative authority. Courts can recognize and enforce only those limitations or restrictions constitutionally imposed. See *United Community Services v. The Omaha Nat. Bank*, 162 Neb. 786, 77 N.W.2d 576 (1956). "Implied restrictions on the legislative power are not to be inferred unless the restriction is one that is clearly implied." *Lenstrom v. Thone, supra* at 790, 311 N.W.2d at 888.

Regarding appropriation of public funds, to appropriate means to set apart, or assign to a particular person or use in exclusion of others, to use or employ for a particular purpose, or in a particular case. See *McCombs v. Dallas County*, 136 S.W.2d 975 (Tex. Civ. App. 1940). Unless restricted by some constitutional provision, either state or federal, a

state's legislature can enact laws and appropriate funds for any public purpose. See *Lenstrom v. Thone, supra.*

In *Lenstrom v. Thone, supra* at 788, 311 N.W.2d at 888, this court held that a scholarship program for financial assistance to students in eligible post-secondary educational institutions in Nebraska did not violate article VII, § 11, of the Nebraska Constitution because the effect of the "literal language [of the constitutional provision] is to prohibit appropriations made 'to' a nonpublic school."

Shortly after *Lenstrom*, we decided *State ex rel. Bouc v. School Dist. of City of Lincoln*, 211 Neb. 731, 320 N.W.2d 472 (1982). *Bouc* involved a Nebraska statute requiring bus transportation for children attending approved nonprofit private schools when a public school district provided transportation of public school students. In *Bouc*, after approving the constitutional construction found in *Lenstrom*, we stated at 737, 320 N.W.2d at 476:

> The record in the present action does not reflect that this is an instance involving a direct appropriation of public funds to a nonpublic institution. . . . [A]ny benefit that may inure to the nonprofit private institution is merely incidental and certainly cannot be deemed to be an "appropriation . . . to" that institution. Under *Lenstrom* such an incidental benefit is insufficient to render [the transportation statute] violative of article VII, § 11.

Section 81-638 recognizes the state's ability to contract with Creighton for services to be rendered by an acceptable program of research in certain aspects of public health. The Nebraska Constitution does not prohibit the state from doing business or contracting with private institutions in fulfilling a governmental duty and furthering a public purpose. Cf. *Pennsylvania Ass'n, Etc. v. Com.*, 63 Pa. Commw. 307, 437 A.2d 1297 (1981) (payment of public funds to a private medical college pursuant to a

contract for management of the state's psychiatric institute did not violate Pennsylvania's constitutional prohibition: "No appropriation shall be made to any charitable or educational institution not under the absolute control of the Commonwealth . . . ." Pa. Const. art. III, § 30.) Some might contend that by a state-contracted program of cancer research the Legislature is doing indirectly what it cannot do directly. Cf. *Schade v. Allegheny County Inst. Dist.*, 386 Pa. 507, 126 A.2d 911 (1956). That overworked expression about circumvention by indirectness, if subjected to the test of ultimate application, would necessitate that a fire in a nonpublic school be extinguished by a nonpublic bucket brigade, not by a publicly funded fire department. Common sense and the Constitution abhor such an impractical conclusion.

We do not rule out the possibility that Creighton may derive an indirect benefit from a research contract with the state, but possible indirect benefit does not transform payments for contracted services into an appropriation of public funds proscribed by article VII, § 11, of the Nebraska Constitution. Benefit is distinguished from purpose. The primary purpose and principal objective of the state's contract regarding cancer research is improved public health in Nebraska. In the case before us, public funds are used for a public purpose—the promotion and search for good health as a benefit to all citizens of Nebraska, simultaneously related to the function of state government. See, *Lennox v. Housing Authority of City of Omaha*, 137 Neb. 582, 290 N.W. 451 (1940); *Lott, et vir, v. City of Orlando, et al.*, 142 Fla. 338, 196 So. 313 (1939); *Pack v. Southern Bell T. & T. Co.*, 215 Tenn. 503, 387 S.W.2d 789 (1965).

The act, §§ 81-637 through 81-640, does not set aside state money for Creighton's special use and does not vest in Creighton any right to receive state funds. Under these circumstances there is no appropriation of public funds to Creighton. The act does properly

recognize and acknowledge the state's constitutional authority to contract for a public purpose. We hold that the act (§§ 81-637 through 81-640) is constitutional.

Respondents contend that mandamus is not a proper remedy, because adopting and reviewing the rules and regulations of the department involve discretionary acts rather than ministerial duties.

A statutory duty is imposed on the director to promulgate his adopted rules regarding the act. See § 81-640. The Attorney General has the statutory duty to review the rules and regulations of the Nebraska Department of Health, that is, the rules and regulations adopted by the director in this case. Upon an examination of the various drafts of the rules and regulations, the Attorney General's opinions, and the correspondence from the director to Creighton, it is absolutely clear that validity of the act is the only question raised by the Attorney General's review for constitutionality of the director's rules and regulations. Before the rules were promulgated there may have been discretion involved— determination whether the foundational act for the rules and regulations was constitutional. It is obvious that the director's rules and regulations as well as the Attorney General's review and opinions are predicated on the unconstitutionality of the act. By our holding the act constitutional, the director's and Attorney General's predicate of unconstitutionality is incorrect. Consequently, constitutionality of the act removes from the province of the director and the Attorney General any discretionary action in making a judgment about constitutionality affecting the rules and regulations under the act. As expressed in *Industrial Develop. Auth. of Cty. of Pinal v. Nelson*, 109 Ariz. 368, 377, 509 P.2d 705, 714 (1973): "There is no question of discretion involved when the problem is one of applying law to established facts, and an officer who must in the first instance pass upon the question may be required to take an-

other course after the court reaches a different conclusion upon the legal issue."

Departmental or administrative decisions contrary to law or based on a mistaken view of the law are not within the exercise of discretion lying outside the remedy of mandamus. By mandamus a court can correct such mistake of law and compel the proper application of law, thereby converting an otherwise discretionary act into a purely ministerial duty. See, *Industrial Develop. Auth. of Cty. of Pinal v. Nelson, supra*; *Mahoney v. Sup. of Elections*, 205 Md. 325, 108 A.2d 143 (1954); *Tanenbaum, Aplnt., v. D'Ascenzo et al.*, 356 Pa. 260, 51 A.2d 757 (1947); *Board of Com'rs of Seminole County v. State ex rel. Cobb, County Judge*, 31 Okla. 196, 120 P. 913 (1912); *Hammond v. Love*, 187 Md. 138, 49 A.2d 75 (1946); *Marland v. Hoffman*, 184 Okla. 591, 89 P.2d 287 (1939).

> We have held that where a specific duty is provided by statute, mandamus may be invoked to enforce it if denied; and the party entitled to such relief will not be forced to pursue his remedy by circuitous and dilatory action at law. State ex rel. Agricultural Extension Service v. Miller, 182 Neb. 285, 154 N.W.2d 469 (1967); State ex rel. Herman v. City of Grand Island, 145 Neb. 150, 15 N.W.2d 341 (1944).

*State ex rel. Simpson v. Vondrasek*, 203 Neb. 693, 701-02, 279 N.W.2d 860, 866 (1979).

The case before us clearly and conclusively shows that the relator, Creighton, is entitled to the relief requested and that the respondents have a legal obligation to act. See, *State ex rel. Newbold v. County of Buffalo*, 202 Neb. 813, 277 N.W.2d 246 (1979); *State ex rel. Bouc v. School Dist. of City of Lincoln*, 211 Neb. 731, 320 N.W.2d 472 (1982).

The judgment of the district court is affirmed in all respects.

AFFIRMED.