FATHER FLANAGAN'S BOYS HOME, APPELLEE, V. DEPARTMENT OF SOCIAL SERVICES OF THE STATE OF NEBRASKA, APPELLANT.
583 N.W. 2d 774

Filed September 4, 1998.    Nos. S-96-1208, S-96-1209.

Don Stenberg, Attorney General, L. Steven Grasz, Royce N. Harper, and Michael J. Rumbaugh, Special Assistant Attorney General, for appellant.

Fredric H. Kauffman and Shawn D. Renner, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

WHITE, C.J., CAPORALE, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ., and BLUE, D.J., Retired.

STEPHAN, J.

The issue presented in these consolidated appeals is whether the Nebraska Department of Health and Human Services (the Department), formerly known as the Department of Social Services, is obligated to compensate a nonpublic school system for providing educational services to wards of the state and wards of the courts (state wards) placed in such schools. In actions filed in the district court for Lancaster County, Father Flanagan's Boys Home (FFBH) alleged that the Department failed to pay the cost of educating state wards placed in schools which FFBH owns and operates. In both cases, FFBH contended that under Neb. Rev. Stat. § 79-445(2) (Reissue 1994), now codified at Neb. Rev. Stat. § 79-215(2) (Reissue 1996), it was entitled to reimbursement for both regular and special education costs. The Department conceded that state wards were placed in the Boys Town Schools to be educated and acknowledged its obligation to reimburse FFBH for the cost of special education, but denied any obligation to pay for the regular education services which FFBH provided to the wards.

The district court determined as a matter of law that the Department was required to reimburse FFBH for the entire cost of educating state wards who had been placed in FFBH's schools. In case No. S-96-1208, the district court entered judg-

ment for FFBH in the amount of $4,661,200.96, representing the cost of providing regular and special education at the Boys Town Schools for the period from the summer term of 1990 through the summer term of 1993. In case No. S-96-1209, the judgment was entered for FFBH in the amount of $3,372,985.33, the cost of regular and special education services provided by FFBH to state wards during the 1993-94, summer 1994, and 1994-95 school terms. The Department appeals from the final judgment in each case, and finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### CASE NO. S-96-1208

The facts were submitted by stipulation of the parties. FFBH is a Nebraska corporation which owns and operates Wegner Elementary School, Boys Town High School, and Father Flanagan High School (Boys Town Schools), which maintain a special education program approved by the Nebraska Department of Education. The State of Nebraska neither owns nor controls the Boys Town Schools.

Prior to the 1990-91 school year, state wards were placed in the Boys Town Schools pursuant to arrangements with the Department or the state courts. Pursuant to § 79-445, as amended, FFBH billed the Department for the cost of special education provided to state wards placed in the Boys Town Schools. The Department reimbursed FFBH for the claimed special education costs. During the 1990-91 school year, FFBH began billing the Department for the cost of providing both regular and special education to state wards placed in the Boys Town Schools. The Department made three payments as reimbursement for FFBH's expenditures for both regular and special education. However, on March 5, 1992, the Department informed FFBH that its payment to reimburse FFBH for the cost of regular education of state wards was made in error and requested that FFBH return $817,964.44. FFBH refused, and as a result, since March 1992, the Department has refused to reimburse FFBH for providing regular and special education to state wards. Notwithstanding the dispute as to whether the state is obligated to pay FFBH for regular education services provided

to its wards, the Department has continued to place state wards in the Boys Town Schools and the schools have continued to provide both regular and special education to the wards.

On April 12, 1994, FFBH filed a petition seeking reimbursement for the cost of educating state wards placed in the Boys Town Schools. During the proceedings, the Department admitted that it had a contract with FFBH concerning payment of educational expenses associated with state wards; however, the Department asserted that the contract required it to pay only for the cost of a ward's special education expenses, not his or her regular education expenses. (We note that the contract itself is not in the record.) In addition, the parties stipulated that none of the wards receiving education from the Boys Town Schools resided on the Boys Town campus.

Following a hearing on cross-motions for summary judgment, the district court entered summary judgment for FFBH on the issue of liability. The court first determined that the payment of educational costs for state wards during the time period at issue was governed by § 79-445(2), which the court found to be clear and unambiguous. Specifically, the district court stated:

> There is no indication anywhere in the statute or from the surrounding sections that there was any intent on the part of the Legislature to limit compensation solely to the ward's "special" education costs. Rather the statute clearly states "the cost of his or her education . . . shall be paid by the state." Although one of the conditions of receiving payment for educating a ward is that such ward be in an institution that maintains a special education program, there is no evidence that reimbursement for costs of educating a ward is limited only to "special" education costs nor should this court impose such a limitation on the plain language of the statute. This court finds that Section 79-445(2) requires the Department to reimburse an institution such as [FFBH] for both the costs of regular and special education of the wards placed with such institution.

The district court then addressed the Department's contention that reimbursing FFBH for the cost of educating state wards violated article VII, § 11, of the Nebraska Constitution. Relying upon *Cunningham v. Lutjeharms*, 231 Neb. 756, 437

N.W.2d 806 (1989); *State ex rel. Bouc v. School Dist. of City of Lincoln*, 211 Neb. 731, 320 N.W.2d 472 (1982); and *Lenstrom v. Thone*, 209 Neb. 783, 311 N.W.2d 884 (1981), the district court determined that the Department's contention was without merit because under the aforementioned decisions of this court, "the only action prohibited by the current language of section 11 of Article VII is a direct appropriation from the legislature to a nonpublic school." In addition, the court concluded, citing *State ex rel. Creighton Univ. v. Smith*, 217 Neb. 682, 353 N.W.2d 267 (1984), that "the education of children who are wards of the state or a court is the fulfillment of 'a governmental duty and further[s] a public purpose.' " Following the partial summary judgment order, the parties entered into a stipulation in which they agreed that the amount of unpaid education costs at issue during the time period involved in case No. S-96-1208 was $4,661,200.96, which included special education costs of $613,146.36 and regular education costs of $4,048,054.60. The district court entered judgment for FFBH in this amount on November 7, 1996, and in the same order rejected the Department's contention that § 79-445(2) was inapplicable because state wards did not reside on the campuses of the Boys Town Schools. The Department perfected a timely appeal, and we removed the matter to our docket pursuant to our power to regulate the dockets of the appellate courts in this state.

CASE NO. S-96-1209

On February 23, 1996, FFBH filed this action, which restated most of the facts of case No. S-96-1208. FFBH sought to recover the cost of regular and special education between and including the 1993-94 and 1994-95 school years. The parties stipulated that the reasonable recoverable cost for the value of the education FFBH provided to state wards during this period was $3,372,985.33, which included special education costs of $252,068.68 and regular education costs of $3,120,916.65. FFBH's petition asserted that the district court's order in case No. S-96-1208 was res judicata in case No. S-96-1209.

On November 7, 1996, following a hearing at which the court allowed the Department to file an amended answer, the court addressed the question raised in the amended answer: whether

FFBH may seek reimbursement under § 79-445(2) for the cost of educating a state ward who attends one of the Boys Town Schools but does not reside on campus. The court concluded:

> The Department contends that the words "has been placed in any institution" require that the student be housed at the institution, in this case, Boys Town, before the state is required to pay for the costs of education. This argument is without merit. When one reads the entire statutory scheme of Section 79-445, it is apparent that the interpretation urged by the Department is too narrow and inconsistent with the balance of the statute.

Thereafter, the court determined that FFBH was entitled to be reimbursed for "the costs of all of the students as set forth in the stipulation of facts presented by the parties, whether such student is housed on the Boys Town campus or is 'housed' elsewhere but attending school at one of the schools maintained by [FFBH]." The court entered judgment for FFBH in the amount of $3,372,985.33, from which the Department appealed. We removed the case to our docket pursuant to our authority to regulate the dockets of the appellate courts of this state and consolidated it with case No. S-96-1208 for briefing and argument.

## ASSIGNMENTS OF ERROR

The Department contends that the district court erred in (1) ruling that § 79-445(2) requires the Department to reimburse FFBH for the cost of providing regular education to state wards and (2) determining that § 79-445(2) contains no residency requirement as a condition of reimbursement.

## STANDARD OF REVIEW

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Abboud v. Papio-Missouri River NRD*, 253 Neb. 514, 571 N.W.2d 302 (1997); *Bank of Papillion v. Nguyen*, 252 Neb. 926, 567 N.W.2d 166 (1997).

Constitutional interpretation is a question of law, on which the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision by the trial court. See *Pig Pro Nonstock Co-op v. Moore*, 253 Neb. 72, 568 N.W.2d 217 (1997).

## ANALYSIS

### "Regular" and "Special" Education

The Special Education Act, now codified at Neb. Rev. Stat. §§ 79-1110 to 79-1184 (Reissue 1996 & Supp. 1997), was enacted by the Legislature in 1987. The legislative intent of the act is that "all children in the State of Nebraska, regardless of physical or mental capacity, are entitled to a meaningful educational program." Neb. Rev. Stat. § 79-3302 (Reissue 1987), now codified at § 79-1111 (Reissue 1996). During the time periods at issue in these cases, the act defined "special education" as "specially designed instruction . . . to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions." Neb. Rev. Stat. § 79-3314 (Reissue 1994). During the same period, Neb. Rev. Stat. § 79-3320 (Reissue 1994) provided, "It shall be the duty of the board of education of every school district to provide or contract for special education programs and transportation for all resident children who would benefit from such programs." School boards could provide the mandatory special education programs directly or through contracts between school districts and various other entities, including nonpublic institutions having special education programs approved by the State Department of Education. Neb. Rev. Stat. §§ 79-3313 and 79-3321 (Reissue 1994). Since there is nothing in the record to indicate otherwise, we regard the term "special education," as used by the parties, to have its statutory definition.

In the stipulations filed in the district court, the parties stated: "FFBH began billing [the Department] for the costs of providing *regular education (as opposed to special education)* to wards of the state and wards of the court . . . ." (Emphasis supplied.) We therefore regard the term "regular education" as including all educational services provided by FFBH to state wards which do not meet the statutory definition of "special education."

The Department does not contend and the record does not reflect that any educational services provided by FFBH to state wards were sectarian in nature.

INTERPRETATION OF § 79-445(2)

The former § 79-445(2), now § 79-215(2), obligates the State of Nebraska to pay the cost of educating state wards under certain defined circumstances. The Department contends that § 79-445(2) required it to reimburse FFBH for the cost of providing special education to state wards placed in the Boys Town Schools, but argues that the statute did not require it to reimburse FFBH for the cost of providing regular education to the same state wards. We note that in construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998); *County of Sherman v. Evans*, 252 Neb. 612, 564 N.W.2d 256 (1997). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *McAllister v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 910, 573 N.W.2d 143 (1998); *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997).

During the relevant time periods, § 79-445(2) provided:

When the pupil as a ward of the state or as a ward of any court (a) has been placed in a school district other than the district in which he or she resided at the time he or she became a ward and such ward does not reside in a foster family home licensed or approved by the Department of Social Services or a foster home maintained or used by the Department of Correctional Services pursuant to section 83-108.04 or (b) has been placed in any institution which maintains a special education program which has been approved by the State Department of Education and such institution is not owned or operated by the pupil's resident school district, the cost of his or her education and the required transportation costs associated with the child's education shall be paid by the state, but not in advance, to the receiving school district or approved institution under rules and regulations prescribed by the Department of Social Services.

We agree with the district court that the language of this statute is unambiguous and, therefore, should be applied in accordance with its plain meaning. The statute clearly provides that if a state ward is placed in an educational institution as defined by *either* clause (a) or (b), "the cost of his or her education" and related transportation costs must be paid by the state.

We are not persuaded by the Department's argument that because clause (b) makes a specific reference to special education while clause (a) does not, a nonpublic institution is entitled to reimbursement of special education costs only. Since public school districts are required by law to offer special education programs, there would have been no reason for the Legislature to specify this requirement in § 79-445(2)(a). Under the plain language of the statute, both the public schools referred to in clause (a) and the nonpublic schools referred to in clause (b) offer regular and special education services for state wards. The statute plainly requires the state to pay the "cost of . . . education" without differentiation as to whether the cost is incurred for regular or special education. In general, it is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language; neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute. *State v. Burlison, ante* p. 190, 583 N.W.2d 31 (1998); *Baker's Supermarkets v. State*, 248 Neb. 984, 540 N.W.2d 574 (1995); *Rust v. Buckler*, 247 Neb. 852, 530 N.W.2d 630 (1995). The Legislature's use of the term "special education" in § 79-445(2)(b) when compared to its use of the term "education" in the prescriptive language following § 79-445(2)(b) demonstrates that the Legislature did not intend to use the terms "education" and "special education" interchangeably and did not intend to limit reimbursement of the cost of education provided to state wards by nonpublic institutions to the cost of special education only.

It is presumed that in enacting a statute, the Legislature intended a sensible, rather than an absurd, result. See *In re Interest of Jaycox*, 250 Neb. 697, 551 N.W.2d 9 (1996). During oral argument, the Department conceded that § 79-445(2) would obligate the state to pay the cost of all regular and special education provided to state wards placed in public schools

outside their home districts. However, under the statutory interpretation which the Department urges us to adopt, the state could avoid the obligation to pay the cost of all regular education services by simply enrolling state wards in nonpublic schools which maintain both regular education and approved special education programs. We regard this as an absurd result which could not have been intended by the Legislature when it enacted § 79-445(2).

Alternatively, the Department argues that if we determine that § 79-445(2) obligates the state to pay the cost of regular education received by state wards at a nonpublic institution, that obligation should be limited to those circumstances where the ward resides at the institution. The Department bases this contention upon the language of § 79-445(2)(b) which refers to a ward being "placed in" a nonpublic educational institution. We note that the same phrase is used in § 79-445(2)(a), which refers to a ward being "placed in" a public school district other than the one in which he resided at the time of becoming a ward. We do not interpret the phrase "placed in" or any other language in § 79-445(2) to require that a state ward actually reside on the campus of a nonpublic educational institution as a condition of the state's obligation to pay the cost of his education. Had the Legislature intended to impose such a residency requirement, it could easily have done so. Instead, it used the phrase "placed in" with reference to wards attending both public and nonpublic schools. The Department stipulated that state wards whose educational costs are the subject of these actions were "placed in" the Boys Town Schools. Its contention that wards must physically reside at a nonpublic educational institution before the state can incur an obligation to pay for their education is without merit.

### CONSTITUTIONAL CHALLENGE

The Department contends that as applied by the district court, § 79-445(2) violates article VII, § 11, of the Nebraska Constitution, which provides in part:

> Notwithstanding any other provision in the Constitution, appropriation of public funds shall not be made to any school or institution of learning not owned or exclusively controlled by the state or a political subdivision

thereof; *Provided*, that the Legislature may provide that the state or any political subdivision thereof may contract with institutions not wholly owned or controlled by the state or any political subdivision to provide for educational or other services for the benefit of children under the age of twenty-one years who are handicapped, as that term is from time to time defined by the Legislature, if such services are nonsectarian in nature.

This language was included in our Constitution by amendments approved in 1972 and 1976. See 1971 Neb. Laws, L.B. 656; 1976 Neb. Laws, L.B. 666.

We have interpreted this constitutional language literally "to prohibit appropriations made 'to' a nonpublic school." *Lenstrom v. Thone*, 209 Neb. 783, 788, 311 N.W.2d 884, 888 (1981). In *Lenstrom*, we held that a statute creating a Scholarship Award Program providing financial assistance directly to needy Nebraska residents to enable them to receive educational services in an eligible postsecondary educational institution did not violate article VII, § 11, of the Nebraska Constitution. We held that the scholarship program did not constitute an appropriation to a nonpublic school, and we specifically rejected a contention that the constitutional provision should be broadly interpreted to prohibit any use of public funds which might either directly or indirectly aid a private school, noting that "[t]he state Constitution is not a grant but a restriction of legislative power," as a consequence of which "courts can enforce only those limitations which the Constitution imposes." *Id.* at 789, 311 N.W.2d at 888. We applied the same rationale in *State ex rel. Bouc v. School Dist. of City of Lincoln*, 211 Neb. 731, 320 N.W.2d 472 (1982), holding that a statute requiring public school districts to provide transportation services to private school students under certain circumstances was not a direct appropriation of public funds to a nonpublic institution and therefore did not violate article VII, § 11, and in *Cunningham v. Lutjeharms*, 231 Neb. 756, 437 N.W.2d 806 (1989), holding that a statute requiring public school districts to purchase and lend textbooks to students in private schools did not constitute an appropriation of public funds to a nonpublic school and thus did not violate article VII, § 11.

In *State ex rel. Creighton Univ. v. Smith*, 217 Neb. 682, 353 N.W.2d 267 (1984), we held that article VII, § 11, did not prohibit the state from contracting with a private university to conduct cancer research. We stated that "[t]he Nebraska Constitution does not prohibit the state from doing business or contracting with private institutions in fulfilling a governmental duty and furthering a public purpose," and that any indirect benefit which the private university might derive from such a research contract "does not transform payments for contracted services into an appropriation of public funds proscribed by article VII, § 11, of the Nebraska Constitution." 217 Neb. at 689-90, 353 N.W.2d at 272.

The Department argues that the present case is distinguishable from *Lenstrom, supra*; *State ex rel. Bouc, supra*; *Cunningham, supra*; and *State ex rel. Creighton Univ., supra*, because it involves a contract for provision of educational services, which implicates the proviso clause in the first sentence of article VII, § 11. The Department contends that because this clause specifically permits a contract with a nonpublic school to provide educational services for handicapped children, i.e., special education, a contract to provide regular education services is necessarily prohibited by implication.

The Nebraska Constitution, as amended, must be read as a whole. *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994); *Jaksha v. State*, 241 Neb. 106, 486 N.W.2d 858 (1992). A constitutional amendment becomes an integral part of the instrument and must be construed and harmonized, if possible, with all other provisions so as to give effect to the whole instrument. *Duggan, supra*; *Jaksha, supra*. The constitutional provision before us in the present case is included within article VII of the Nebraska Constitution, entitled "Education." Article VII, § 1, provides:

> The Legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years. The Legislature may provide for the education of other persons in educational institutions owned and controlled by the state or a political subdivision thereof.

The remaining provisions of article VII deal with implementation of the free public education for Nebraska residents mandated by § 1. Specifically, §§ 5, 6, 7, 8, 9, and 11 deal with funding of the state's public education system. As noted, we have held that § 11 in its present form prohibits appropriations made to a nonpublic school. See, *Lenstrom, supra*; *State ex rel. Bouc, supra*; *Cunningham, supra*; and *State ex rel. Creighton Univ., supra*. When read in its grammatical context, the language of the proviso clause constitutes an exception to this prohibition which authorizes the state to enter into contracts with nonpublic entities to provide educational services to handicapped children which the state would otherwise be required to provide. In other words, the proviso authorizes the state to contractually delegate its constitutional duty to provide free nonsectarian educational services to handicapped children.

This case does not involve a contractual delegation of the state's duty to provide a free public education to its citizens. Rather, it involves a contract made by a state agency to obtain educational services for state wards for whom it is responsible in a quasi-parental capacity. Just as a parent has a natural and legal duty to give his child an education, see *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923), the Department, as the entity having legal custody of school-age wards, is responsible for obtaining appropriate educational services for them. In carrying out this duty, the Department could have placed wards residing outside their home districts in public schools, and it conceded at oral argument that had it done so, it would have been responsible for paying the cost of both regular and special education services. For reasons which are not apparent from the record, the Department chose instead to place state wards in the Boys Town Schools, where they received both regular and special education services. The Department now argues that it should be relieved of any obligation to pay FFBH for regular educational services provided to state wards because such payment would constitute an appropriation of public funds to a nonpublic institution, in violation of Neb. Const. art. VII, § 11. We find this argument to be without merit.

In the context of appropriation of public funds, "to appropriate means to set apart, or assign to a particular person or use in

exclusion of others, to use or employ for a particular purpose, or in a particular case." *State ex rel. Creighton Univ. v. Smith*, 217 Neb. 682, 688, 353 N.W.2d 267, 271 (1984). Here, there has been no appropriation of public funds to FFBH. Instead, a state agency has exercised its discretionary authority to contract for services necessary to fulfill a governmental duty ar d further a public purpose, namely, the state's duty to obtain a nonsectarian education for its wards. The fact that a nonpublic institution derives a benefit from the contract "does not transform payments for contracted services into an appropriation of public funds proscribed by article VII, § 11, of the Nebraska Constitution." *Id.* at 690, 353 N.W.2d at 272. Therefore, we determine that § 79-445(2) as applied by the district court does not contravene article VII, § 11, of the Nebraska Constitution.

## CONCLUSION

We determine, as did the district court, that the unambiguous language of § 79-445(2) obligates the state to pay the cost of both regular and special education received by state wards placed in the Boys Town Schools and that the statute as so applied does not violate Neb. Const. art. VII, § 11. The record contains undisputed evidence that state wards were placed in the Boys Town Schools during the time periods encompassed by these actions and that the state has not paid the cost of their education during such periods as required by § 79-445(2). Therefore, the district court did not err in entering the judgments in favor of FFBH, and the judgments are hereby affirmed.

AFFIRMED.

WRIGHT, J., not participating.