REQUESTED BY: Mr. Harold W. Clarke Nebraska Department of Correctional Services
You have requested an Attorney General's Opinion which addresses two questions: (1) does Neb. Rev. Stat. § 83-183 allow prison inmates to assemble raw materials into components for Habitat for Humanity Homes; and (2) if the Department of Correctional Services paid the inmates performing such assembly work a standard inmate wage, would there be a violation of the prohibition on using public funds for private purposes?
We conclude that the participation of inmates in the proposed Habitat for Humanity program would be permissible under § 83-183
and other statutes due to the expansive nature of the statutory language. Although it could be argued that compensation of inmates for their participation in this program would constitute an expenditure of public funds for private purposes, which would be prohibited by Article XIII, § 3 of the Nebraska Constitution, it is likely that the purposes of the proposed program are sufficiently "public" to permit the expenditure.
Habitat for Humanity is a non-profit charitable corporation that builds homes for low-income families in Nebraska. Under the proposed plan, no inmates would be required to work on this project, but those that chose to do so would be paid the standard inmate wage. The provisions of Neb. Rev. Stat. § 83-183 would not prohibit prison inmates from engaging in this proposed enterprise.
Under § 83-183(1), ". . . persons committed to the department [of Corrections] shall be employed, eight hours per day, so far as possible in constructive and diversified activities in the production of goods, services, and foodstuffs to maintain the facilities, for state use, and for other purposes authorized bylaw." (Emphasis added). The proposed involvement with Habitat for Humanity would clearly not constitute activities for the maintenance of prison facilities or for state use. However, the language in the statute authorizing activities for "other purposes authorized by law" can be interpreted to authorize the contemplated program because other provisions of law provide ample authority. For example, Neb. Rev. Stat. § 83-182 provides that "[t]he director shall establish appropriate programs for each facility designed as far as practical to prepare and assist each person committed to the department to assume his or her responsibilities as a useful citizen." The proposed Habitat for Humanity program would provide inmates with job training and skills in the form of vocational education. Therefore, participation of inmates in the proposed program would be permissible under Neb. Rev. Stat. § 83-183.
The proposed Habitat for Humanity program would not violate the constitutional prohibition of the use of public funds for private purposes. Under Article XIII, § 3 of the Nebraska Constitution, "[t]he credit of the state shall never be given or loaned in aid of any individual, association, or corporation. . . ." The contemplated expenditures for inmate wages would clearly not be an extension of the state's "credit," and accordingly, would not violate the literal text of Article XIII, § 3. However, the Nebraska Supreme Court has recognized an implicit corollary to the literal text that might apply to the proposed program: "Closely related to the prohibition against the giving or lending of the state's credit, although technically not part of the prohibition due to the narrow and specific wording, is the principle of law that public funds cannot be expended for private purposes." Hamanv. Marsh, 237 Neb. 699, 721-722 (1991). For example, in OxnardBeet Sugar Co. v. State, 73 Neb. 57 (1905), the court invalidated a law authorizing a subsidy to be paid to the manufacturers of sugar and chicory as an impermissible expenditure of public funds for private purposes. In this case, if the expenditure of funds to compensate inmates working in support of a private organization is deemed an expenditure for "private purposes," then the state would not be permitted to pay the inmates for such work. However, the facts of this case are distinguishable from cases like Oxnard; and it is likely that the proposed expenditures in this case are for purposes that are sufficiently "public" to fall outside the proscription, and any incident benefit to a private organization would not sufficiently alter the nature of those purposes.
In Haman, the court noted that "[a] public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants." Haman, 237 Neb. at 721. The proposed program would provide educational and training opportunities for inmates, preventing prisoner idleness, and perhaps instilling in inmates a charitable impulse, while at the same time, assisting low-income families in Nebraska. All of these goals appear to be within the court's definition of "public purpose." As such, it is likely that the program at issue would not be an impermissible expenditure of public funds for private purposes. The mere fact that a private organization is receiving an incident benefit does not negate the existence of a public purpose. In State ex rel.Creighton University v. Smith, 217 Neb. 682 (1984), the court considered the propriety of awarding a state grant for cancer research to a private university. The court held that "possible indirect benefit does not transform payments for contracted services into an [impermissible] appropriation of public funds. . . . Benefit is distinguished from purpose. The primary purpose and principal objective of the state's contract regarding cancer research is improved public health in Nebraska." State exrel. Creighton University, 217 Neb. at 690. In a case involving the Omaha Public Power District's authority to make pledges to a non-profit charitable organization, the court stated that:
 [T]he vital point in all such appropriations is whether the purpose is public; and that, if it is, it does not matter whether the agency through which it is dispensed is public or not; that the appropriation is not made for the agency, but for the object which it serves; the test is in the end, not in the means [utilized to achieve the Unicameral's purpose.]
United Community Services v. The Omaha National Bank,162 Neb. 786, 800 (1956). In a later case involving the City of Omaha's appropriation of tax revenue to encourage immigration, new industries and investment, the court held:
 [T]o justify a court in declaring a tax invalid because it is not for a public purpose, the absence of a public purpose must be so clear and palpable as to be immediately perceptible to the reasonable mind.
Chase v. County of Douglas, 195 Neb. 838, 846 (1976).
In 1983, the Legislature clearly expressed its intention that the labor of Nebraska inmates could be used to benefit "any charitable, fraternal, or non-profit corporation" when it amended Neb.Rev.Stat. Section 83-145 to permit the purchase of inmate-made goods by such organizations. LB 594, 1983 Legislative Session. The use of inmate labor for the assembly of components for Habitat for Humanity, therefore, would be consistent with legislative intent.
In conclusion, because the proposed arrangement with Habitat for Humanity would provide inmates with job training and skills in the form of vocational education and would assist in providing low-income families in Nebraska with affordable housing, the participation of inmates would be permissible under Neb.Rev.Stat. § 83-183 and would not violate Article XIII, § 3 of the Nebraska Constitution. Further, such an arrangement would be consistent with legislative intent expressed with the enactment of Neb.Rev.Stat. Section 83-145 and would, therefore, be permissible.
Sincerely,
 DON STENBERG Attorney General
 Suzanna Glover-Ettrich Assistant Attorney General
APPROVED BY:
DON STENBERG
Attorney General