REQUESTED BY: Roger K. Patterson, Director, Department of Natural Resources
You have requested an opinion from this office regarding the constitutionality of payments pursuant to Neb. Rev. Stat. 2-1579 made to schools or institutions of learning not owned or exclusively controlled by the State or a political subdivision, or to churches or other institutions that might be considered "religious societies," in the context of Article I, 4 and Article VII, 11 of the Nebraska Constitution. For the reasons set forth below, we conclude that such payments do not violate the Nebraska or United States Constitutions.
The Nebraska Soil and Water Conservation Act (the "Act") created the Nebraska Soil and Water Conservation Fund (the "Fund") from which the Nebraska Natural Resources Commission (the "Commission") may reimburse individual landowners for a portion of the actual cost of eligible projects and practices for soil and water conservation or water quality protection. Neb. Rev. Stat. 2-1577 to 1579. The Fund is financed by legislative appropriations and payments from various other sources. Neb. Rev. Stat. 2-1577(1). The stated intent of the Act is to further the public policy of conserving, protecting, and properly utilizing the water and related land resources of the State through financial assistance to private landowners undertaking such resource conservation and protection measures. Neb. Rev. Stat. 2-1576.
The Act authorizes the Commission to adopt rules and regulations for the necessary administration of the Fund, and sets forth conditions for the Fund's expenditures to be made. Neb. Rev. Stat. 2-1578 and 1579. While the conditions for the Fund's expenditures are expressly limited to grants not to exceed seventy-five percent of the actual costs of eligible projects and practices, the only designation of or limitation on the identity of grantees is that they be "landowners." Neb. Rev. Stat. 2-1579. In Title 262 of the Nebraska Administrative Code, the Commission has adopted rules and regulations that further define eligible projects and practices, and has set forth procedures for applying for grants and contracts (also referred to as "cost share payments") related thereto. Any payment made to a non-public institution would be subject to identical requirements as those used for other landowners.
The Nebraska Supreme Court has stated that:
 Unlike the federal Constitution, a state constitution is not a grant of power but a limitation of power. The widely accepted doctrine is that a state legislature may generally pass any act, because legislative capacity not constitutionally inhibited or prohibited is retained by the people and exercised in the legislature by representatives of the people.
State ex rel. Creighton University v. Smith, 217 Neb. 682, 687 (1984) (citations omitted). Thus, unless there is a constitutional restriction on the power of the Legislature, it may enact laws and appropriate funds any way it chooses. The two constitutional restrictions at issue in this analysis are Article I, 4 and Article VII, 11 of the Nebraska Constitution.
 Article VII, 11
Article VII, 11 of the Constitution of the State of Nebraska prohibits the appropriation of public funds "to any school or institution of learning not owned or exclusively controlled by the state or a political subdivision thereof. . . ." "[T]he effect of the "literal language [of the constitutional provision] is to prohibit appropriations made 'to' a nonpublic school."" Creighton, 217 Neb. at 689 (citing Lenstrom v. Thone, 209 Neb. 783, 788 (1981)). This opinion request presumes that the parties receiving the cost-share payments at issue are either non-public schools or religious societies, thus the pertinent determination is whether the payments pursuant to Neb. Rev. Stat. 2-1579
are "appropriations."
Regarding appropriation of public funds, to appropriate means to set apart, or assign to a particular person or use in exclusion of others, to use or employ for a particular purpose, or in a particular case. Creighton, 217 Neb. at 688 (citing McCombs v. Dallas County, 136 S.W.2d 975
(Tex.Civ.App. 1940). Payments from the Fund are grants to landowners to achieve the environmental objectives of the Commission, not "appropriations," and are not prohibited by Article VII, 11.
In State ex rel. Creighton v. Smith, the University of Creighton petitioned the court to require the State to consider it for grants and contracts for research of cancer and smoking diseases that were provided for by Neb. Rev. Stat. 81-637 through 81-640. 217 Neb. at 683-84. Creighton University is a non-public school to which Article VII, 11 prohibits legislative appropriations, and the grants and contracts at issue were clearly funded by state appropriations. Id. The State had interpreted the statutes as excluding Creighton University from eligibility, by adopting regulations that limited the grants and contracts at issue to public post-secondary institutions. Id. Yet, the Nebraska Supreme Court recognized, specifically in reference to Article VII, 11, that "The Nebraska Constitution does not prohibit the state from doing business or contracting with private institutions in fulfilling a governmental duty and furthering a public purpose." Id. at 689.
Since the statutes in State ex rel. Creighton did not set aside money specifically for the non-public school, or vest in the non-public school any right to receive the grants or contracts provided for therein, then the Court held that there was no "appropriation" of public funds to a non-public school. Id. at 690. The Court further found that the statutes at issue were constitutional as applied to grants or contracts to non-public schools pursuant to the State's constitutional authority to contract for a public purpose, and affirmed issuance of a writ of mandamus that required the State to consider Creighton University for said grants and contracts. Id. at 691-692.
In other relevant cases, the Nebraska Supreme Court has upheld statutes that authorize the transportation of non-public school students on public school buses, grant scholarships for financial assistance to students attending non-public postsecondary educational institutions, reimburse non-public educational institutions for the education of state wards, and that required public schools to purchase and lend textbooks to students in non-public schools. See State ex rel. Bouc v. School Dist. Of City of Lincoln, 211 Neb. 731 (1982); Lenstrom v. Thone, 209 Neb. 783
(1981) ("[A]ny benefit that may inure to the nonprofit private institution is merely incidental and certainly cannot be deemed to be an "appropriation . . . to" that institution."); Father Flanagan's Boys Home v. Department of Social Services of State of Neb., 255 Neb. 303 (1998); and Cunningham v. Lutjeharms, 231 Neb. 756 (1989). These cases all follow the Court's rationale in State ex rel. Creighton that any indirect benefit which the non-public entities might derive from such state funds does not transform payments for contracted services into an unlawful appropriation of public funds. Creighton, 217 Neb. at 689-90.
The Nebraska Soil and Water Conservation Fund merely reimburses individual landowners for a portion of the actual cost of eligible environmental projects. It fulfills the valid public policy of conserving, protecting, and properly utilizing the water and related land resources of the State through financial assistance to private landowners undertaking such resource conservation and protection measures. While the conditions for the Fund's expenditures are expressly limited to grants not to exceed seventy-five percent of the actual costs of eligible projects and practices, the only designation of or limitation on the identity of grantees is that they be "landowners." Neb. Rev. Stat. 2-1579. The Legislature clearly has the right to grant to or contract with private entities to achieve its public policy objectives. Just as in State ex rel. Creighton, since the Legislature has not limited the grantees to public entities, then it would be improper for the Commission to adopt such a limitation.
Since the Act does not authorize appropriations to non-public schools, it does not violate Article VII, 11 of the Constitution of the State of Nebraska. Just as in State ex rel. Creighton and Lenstrom, any payments to non-public schools from the Fund, even though resulting in indirect benefits to non-public schools, are not appropriations of public funds and do not violate Article VII, 11. Furthermore, as in State ex rel. Creighton, any interpretation of the Act which discriminates or otherwise disqualifies non-public schools from applying for Fund grants or contracts would be improper.
 Article I, 4
Article I, 4 of the Constitution of the State of Nebraska provides that: "No person shall be compelled to attend, erect or support any place of worship against his consent, and no preference shall be given by law to any religious society. . . ." We do not believe a court would find that a payment to a landowner for projects and practices for soil and water conservation or water quality protection would constitute support of a "place of worship." Furthermore, Article I, Section 4 does not prohibit payment of State funds to religious societies, it merely prohibits any preferences therefore.
As noted above, any payment made from the Fund to a non-public entity is subject to requirements identical to those used for other landowners. No preference is provided by the relevant statutes and regulations for non-public schools or other institutions that may be considered religious societies. As the Nebraska Supreme Court held in State ex rel. Bouc v. School Dist. of City of Lincoln, 211 Neb. 731,737(1982), "[A]ny benefit that may inure to the . . . private institution is merely incidental . . . ." Likewise, assuming that Neb. Rev. Stat.2-1579 and Title 262 of the Nebraska Administrative Code are followed objectively, then Article I, section 4 of Constitution of the State of Nebraska is not violated by payments from the Fund to non-public schools or religious societies.
 The Establishment Clause of the United States Constitution
Although not specifically addressed in your opinion request, an analysis of the Act under the Establishment Clause of the First Amendment is also required to determine the appropriateness expenditures from the Fund to non-public schools or religious societies. "The Establishment Clause of the First Amendment, applied to the States through theFourteenth Amendment, prevents a State from enacting laws that have the "purpose" or "effect" of advancing or inhibiting religion." Zelman v. Simmons-Harris, 536 U.S. 639, 648-649 (2002) (citing Agostini v. Felton,521 U.S. 203, 222-223 (1997)). Based upon its stated legislative intent and objective requirements, we do not believe the Act violates the Establishment Clause.
The Act was expressly enacted for the valid secular purpose of conserving, protecting, and properly utilizing the water and related land resources of the State through financial assistance to private landowners undertaking such resource conservation and protection measures. Neb. Rev. Stat. 2-1576. Furthermore, "government programs that neutrally provide benefits to a broad class of citizens defined without reference to religion are not readily subject to an Establishment Clause challenge." Zelman, 536 U.S. at 651 (citing Zobrest v. Catalina Foothills School Dist., 509 U.S. 1, 8 (1993).
Just as the legislative action at issue in Zelman, the Act provides for:
 . . . no "financial incentive[s]" that "ske[w]" the program toward religious schools. Such incentives "[are] not present . . . where the aid is allocated on the basis of neutral, secular criteria that neither favor nor disfavor religion, and is made available to both religious and secular beneficiaries on a nondiscriminatory basis."
Zelman, 536 U.S. at 653-654. The Act, and the rules and regulations adopted pursuant thereto, establish detailed procedures that landowners must follow with regard to applying for and utilizing grants and contracts from the Fund. See Neb. Rev. Stat. 2-1579 and Title 262 of the Nebraska Administrative Code.
The Fund's payments are utilized solely for the environmental and conservation projects provided for in the Act. The Act provides for eligibility of all landowners, without regard to religion. Thus, there is no realistic danger that the funding of such projects would result in the endorsement of religion or any particular creed. For these reasons, we believe that payments from the Fund to non-public schools or religious societies do not violate the Establishment Clause.
Sincerely,
 JON BRUNING Attorney General
 David D. Cookson Assistant Attorney General
Approved:
____________________________ Attorney General