JAMES R. CUNNINGHAM, INDIVIDUALLY AND AS NEXT FRIEND OF HIS MINOR DAUGHTER, JANELLE C. CUNNINGHAM, APPELLEE, V. JOSEPH E. LUTJEHARMS, COMMISSIONER OF EDUCATION, ET AL., APPELLANTS.

437 N.W.2d 806

Filed April 7, 1989.    No. 87-754.

Robert M. Spire, Attorney General, and Harold Mosher for appellants.

Steven G. Seglin and Robert B. Crosby, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

This appeal seeks to have declared unconstitutional legislation requiring public school districts to purchase and loan textbooks to students in private schools. Textbook purchases would be funded through appropriations by Nebraska's Legislature.

We find the legislation, Neb. Rev. Stat. § 79-4,118 (Reissue 1987), constitutional.

James R. Cunningham brought this action in the Lancaster County District Court, seeking to borrow fourth-grade textbooks for his daughter, Janelle C. Cunningham, from the Lincoln, Nebraska, public school district in which she resides. Janelle Cunningham attends St. John's Elementary School in Lincoln.

Named as defendants are Joseph E. Lutjeharms, Commissioner of Education; the State Board of Education; and the State Department of Education. This lawsuit was presented as a case stated pursuant to Neb. Rev. Stat. § 25-903 (Reissue 1985). The statute at issue, § 79-4,118, provides in part:

> (2) Boards of education shall have the power and duty to purchase and to loan textbooks to all children who are enrolled in kindergarten to grade twelve of a public school *and, upon individual request, to children who are enrolled in kindergarten to grade twelve of a private school which is approved for continued legal operation under rules and regulations established by the State Board of Education* pursuant to subdivision (5)(c) of section 79-328. The Legislature may appropriate funds to carry out the provisions of this subsection. A school district shall not be

obligated to spend any money for the purchase and loan of textbooks to children enrolled in private schools other than funds specifically appropriated by the Legislature to be distributed by the State Department of Education for the purpose of purchasing and loaning textbooks as provided in this subsection. Textbooks loaned to children enrolled in kindergarten to grade twelve of such private schools shall be textbooks which are designated for use in the public schools of the school district. Such textbooks are to be loaned free to such children subject to such rules and regulations as are or may be prescribed by such boards of education. The State Department of Education shall adopt and promulgate rules and regulations to carry out the provisions of this section. The rules and regulations shall include provisions for the distribution of funds appropriated for textbooks. The rules and regulations shall include a deadline for applications from school districts for distribution of funds. If funds are not appropriated to cover the entire cost of applications, a pro rata reduction shall be made.

(Emphasis supplied.)

A "private school," for the purposes of this opinion, is synonymous with "nonpublic school," both of which include church-related schools. Based upon previous decisions by this court, the district court determined that the statute is constitutional. The appellants assign as error the district court's finding that § 79-4,118 does not violate the Constitution of Nebraska or the Constitution of the United States.

Stipulated facts show that in November of 1986, James Cunningham made a written request of the Lincoln Public Schools for the loan of textbooks designated for use in the fourth grade in the public school district. Cunningham's request was made individually and on behalf of his daughter. The Lincoln Public Schools made a written request of Joseph Lutjeharms, Commissioner of Education of the State of Nebraska, for the distribution of funds appropriated by the Legislature for the purchase of textbooks to be loaned to Janelle. Commissioner Lutjeharms refused to distribute the funds until the statute's constitutionality had been tested in

court. This action ensued.

Appellants claim: (1) that the statute violates article VII, § 11, of the Nebraska Constitution; (2) that the statute violates the establishment clause of the first amendment to the U.S. Constitution; and (3) that the statute is impermissibly vague, in violation of article I, § 3, of the Nebraska Constitution and the 14th amendment to the U.S. Constitution.

Article VII, § 11, of the Nebraska Constitution, as amended in 1972, states: "[A]ppropriation of public funds shall not be made to any school or institution of learning not owned or exclusively controlled by the state or a political subdivision thereof . . . ."

We have previously held that this section of the Nebraska Constitution, as amended, prohibits appropriations by the Legislature *to* nonpublic schools. See, *State ex rel. Bouc v. School Dist. of City of Lincoln*, 211 Neb. 731, 320 N.W.2d 472 (1982); *Lenstrom v. Thone*, 209 Neb. 783, 311 N.W.2d 884 (1981). Section 79-4,118 does not permit public funds to be distributed *to* nonpublic schools, nor does it permit publicly owned textbooks to be loaned *to* private schools. The statute authorizes and directs that, under certain conditions, public schools must loan to private school students, without charge, textbooks which are designed for use in public schools of the school district. Reading the statute in its entirety, the loan of textbooks treats all kindergarten to 12th-grade students alike, whether public or private students.

Before it was amended by the voters in 1972, article VII, § 11, of Nebraska's Constitution prohibited appropriation of public funds "in aid of" any nonpublic school.

In interpreting article VII, § 11, of Nebraska's Constitution when it prohibited appropriation of public funds "in aid of" any nonpublic school, this court held unconstitutional a statute requiring the loan of textbooks by public schools to nonpublic schools for students grades 7 to 12. *Gaffney v. State Department of Education*, 192 Neb. 358, 220 N.W.2d 550 (1974).

Appellants argue that whether it uses "to" any nonpublic school or "in aid of" any nonpublic school, article VII, § 11, of Nebraska's Constitution should be interpreted to prevent the

loan of textbooks to private school students. Similar arguments were raised and rejected in *Bouc, supra*, *Lenstrom, supra*, and *State ex rel. Creighton Univ. v. Smith*, 217 Neb. 682, 353 N.W.2d 267 (1984). After the 1972 amendment, *Bouc* held it was constitutional to permit students, under certain conditions, to ride public school buses to private schools. In *Lenstrom*, it was held constitutional to issue grants of public funds to students who in turn used them to attend private colleges. A contract between the state and a nonpublic medical school involving cancer research was found constitutional in *Smith*. The discussions in those cases are thorough and will not be repeated here. For the reasons given in *Bouc*, *Lenstrom*, and *Smith*, § 79-4,118 does not violate article VII, § 11, of the Nebraska Constitution.

Appellants also argue that § 79-4,118 violates the first amendment to the U.S. Constitution. We are controlled in this area by the holdings of the U.S. Supreme Court in *Meek v. Pittenger*, 421 U.S. 349, 95 S. Ct. 1753, 44 L. Ed. 2d 217 (1975). In that case, the Supreme Court upheld the loan of textbooks to nonpublic school students. See, also, *Wolman v. Walter*, 433 U.S. 229, 97 S. Ct. 2593, 53 L. Ed. 2d 714 (1977).

The U.S. Supreme Court has developed a three-pronged analysis for determining whether legislation is violative of the first amendment's establishment clause. First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; and, finally, the statute must not foster "an excessive government entanglement with religion." See, *Meek, supra*; *Wolman, supra*. The establishment clause is applicable to the states through the 14th amendment to the U.S. Constitution.

Section 79-4,118 is nearly identical to the statutes approved by the U.S. Supreme Court in *Meek* and *Wolman*. Using the U.S. Supreme Court's three-pronged analysis, the Nebraska statute does, without question, pass U.S. Constitutional scrutiny.

As in *Meek* and *Wolman*, the words of the statute itself show that § 79-4,118 does have a secular purpose: It provides all schoolchildren, public and private students, without charge, the use of textbooks. Ownership of the books remains with the

public schools. The language of the statute requires that the books loaned to nonpublic school children be those "designated for use in the public schools." We follow the U.S. Supreme Court's lead in construing this language to limit the statute to the loan of only secular textbooks. See *Meek, supra.* The textbook loan provisions of § 79-4,118 in every material respect are the same as those approved in *Meek* and *Wolman.*

Nebraska's Legislature has " 'merely [made] available to all children the benefits of a general program to lend school books free of charge. . . .' " *Meek, supra* at 360, quoting *Board of Education v. Allen*, 392 U.S. 236, 88 S. Ct. 1923, 20 L. Ed. 2d 1060 (1968).

Since the contents of the textbooks to be loaned to nonpublic students will be secular in nature, the principal or primary effect of Nebraska's textbook loan program will neither advance nor inhibit religion. The program passes the second-prong test of the U.S. Supreme Court's three-pronged analysis.

Next, we turn to whether § 79-4,118 will foster "an excessive government entanglement with religion," since most, if not all, of the nonpublic schools in Nebraska are religion related.

In disagreeing with the U.S. Supreme Court's plurality opinion upholding the loan of textbooks to nonpublic students in *Meek v. Pittenger, supra* at 374-75, Justice Brennan, quoting from *Lemon v. Kurtzman*, 403 U.S. 602, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971), struck this warning note:

"In a community where . . . a large number of pupils are served by church-related schools, it can be assumed that state assistance will entail considerable political activity. Partisans of parochial schools, understandably concerned with rising costs and sincerely dedicated to both the religious and secular educational missions of their schools, will inevitably champion this cause and promote political action to achieve their goals. Those who oppose state aid, whether for constitutional, religious, or fiscal reasons, will inevitably respond and employ all of the usual political campaign techniques to prevail. Candidates will be forced to declare and voters to choose. It would be unrealistic to ignore the fact that many people confronted

with issues of this kind will find their votes aligned with their faith.

"Ordinarily political debate and division, however vigorous or even partisan, are normal and healthy manifestations of our democratic system of government, *but political division along religious lines was one of the principal evils against which the First Amendment was intended to protect. . . .* The potential divisiveness of such conflict is a threat to the normal political process. . . . It conflicts with our whole history and tradition to permit questions of the Religion Clauses to assume such importance in our legislatures and in our elections that they could divert attention from the myriad issues and problems that confront every level of government. . . .

". . . *Here we are confronted with successive and very likely permanent annual appropriations that benefit relatively few religious groups. Political fragmentation and divisiveness on religious lines are thus likely to be intensified.*

"*The potential for political divisiveness related to religious belief and practice is aggravated . . . by the need for continuing annual appropriations and the likelihood of larger and larger demands as costs and populations grow. . . ." Id.,* at 622-623. (Emphasis added.)

Without being all-inclusive, examples of types of government programs that will not, and other types of programs that will, foster "excessive government entanglement with religion" may be gleaned from *Wolman v. Walter,* 433 U.S. 229, 97 S. Ct. 2593, 53 L. Ed. 2d 714 (1977). *Wolman,* citing *Lemon v. Kurtzman, supra,* and *Everson v. Board of Education,* 330 U.S. 1, 67 S. Ct. 504, 91 L. Ed. 711 (1947), notes that earlier opinions of the U.S. Supreme Court " 'permitted the States to provide church-related schools with secular, neutral, or nonideological services, facilities, or materials. Bus transportation, school lunches, public health services, and secular textbooks supplied in common to all students were not thought to offend the Establishment Clause.'. . ." (Emphasis omitted.) 433 U.S. at 242.

On the other hand, *Wolman* affirms that providing

nonpublic schools maps and charts, teaching and counseling services, and the funding for student field trips are offensive to the establishment clause of the U.S. Constitution when the nonpublic school would be the direct recipient of the items or services or when it would involve close supervision of nonpublic school teachers to ensure the nonreligious use of the items, funds, and services. That necessary supervision would constitute excessive government entanglement.

Merely loaning secular textbooks to nonpublic school students, as provided in § 79-4,118, will not require close supervision of nonpublic school teachers by government and will not foster "an excessive government entanglement with religion."

Applying the U.S. Supreme Court's three-pronged test required by *Wolman, supra*, we find that § 79-4,118 of the Nebraska statutes is not violative of the establishment clause of the U.S. Constitution.

Appellants' final argument is that the statute in question is impermissibly vague and therefore violates the due process provisions of the Nebraska and U.S. Constitutions. Although most decisions invoking the void for vagueness doctrine have dealt with criminal statutes, the doctrine applies equally to civil statutes. *Weiner v. State ex rel. Real Estate Comm.*, 217 Neb. 372, 348 N.W.2d 879 (1984); *State v. A. H.*, 198 Neb. 444, 253 N.W.2d 283 (1977).

The established test for vagueness in a statute is whether it either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application. See *State ex rel. Douglas v. Herrington*, 206 Neb. 516, 294 N.W.2d 330 (1980).

At issue is the following language: "Boards of education shall have the power and duty to purchase and to loan textbooks . . . *upon individual request*, to children who are enrolled in kindergarten to grade twelve of a private school . . . ." (Emphasis supplied.) Appellants contend that the emphasized portion of that phrase does not give school boards sufficient guidance. They question whether a school board will be able to determine when an individual request has been made. Appellee argues that common sense need not be disregarded

and that the phrase "upon individual request" is specific enough to put a school board on notice that a request has to be made on behalf of each student.

" '[E]ven in criminal statutes the language adopted need not afford an interpretation approaching mathematical certainty. . . .' " *Weiner v. State ex rel. Real Estate Comm., supra* at 375, 348 N.W.2d at 882; *State v. A. H., supra,* citing *Parker v. Levy,* 417 U.S. 733, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974). The language of § 79-4,118 could perhaps be more artfully designed. However, it is not so vague that a school board will be required to guess at its meaning.

The statute gives each nonpublic school student the right to obtain textbooks from a public school. "[U]pon individual request" means upon request of the student. Fathers and mothers are the natural guardians of their children and have the right to direct their education. Neb. Rev. Stat. § 30-2608 (Reissue 1985). A legal guardian of a minor has the powers and responsibilities of a parent. Neb. Rev. Stat. § 30-2613 (Reissue 1985). Accordingly, a parent or legal guardian may request a textbook on behalf of his or her nonpublic school child.

We find no merit to any of the appellants' arguments challenging the constitutionality of § 79-4,118. The statute violates neither the Nebraska Constitution nor the U.S. Constitution.

The judgment of the district court is affirmed.

AFFIRMED.