REQUESTED BY: Kathryn Piller Nebraska State Board of Education member
This opinion is written in response to your request for an opinion on the legality of the State Board of Education's ("State Board") actions regarding statewide assessment of academic standards.
 Issues
Your letter states:
 I am requesting your opinion regarding the legality of the State Board of Education telling schools that academic standards are optional, then mandating the testing (assessment) of those standards.
 In addition, my concern regards the possibility of future board action regarding sanctions or rewards for not achieving or exceeding the voluntary academic standards.
 In addition, we are requiring school districts report their progress regarding voluntary academic standards and assessment of those standards, on a published report card. By requiring that school districts publish their results of voluntary academic standards and assessments are we doing something that could get us in legal trouble in the future?
 I would further like to know if academic standards are mandatory rather than voluntary would we be on legal ground in testing them, reporting results and possibly giving sanctions or rewards to school districts?
 Though I want to hold school districts accountable, before we move further, it is important to know if we are approaching these issues with the legal rights of school districts in mind.
 Administrative Regulations and Statutes
By your reference to academic standards which are optional, we assume you mean the four "content standard" regulations issued by the Nebraska Department of Education ("Department") in 1999. They are Nebraska Mathematics Content Standards, 94 NAC 1; Nebraska Reading/Writing Content Standards, 94 NAC 2; Nebraska Science Content Standards, 94 NAC 3; and Nebraska Social Studies/History Content Standards, 94 NAC 4. The Department's purpose is provided in § 001.01 of all four of these regulations. "The State Board of Education adopts these standards to identify what students should know and be able to do and what teachers should teach."
The Attorney General's office, in its review of these regulations prior to their implementation, conditioned its approval upon the Department's use of them as voluntary guidelines only. This office concluded that many of the provisions of the content standards, which were satisfactorily drafted for use as suggestive guidelines, would very likely fail as unconstitutionally vague if they were intended as enforceable provisions. Approval of the content standard regulations by the Attorney General's office was premised upon their use as guideline documents and not as enforceable regulations.
The Department has set forth in § 001.02 of all four regulations that their adoption is voluntary:
 There is no requirement for school districts to adopt standards. The adoption of standards is voluntary. Districts may (1) adopt the standards of the State Board; (2) adopt standards that equal or exceed the academic rigor of the state standards; or, (3) not adopt standards. Any reference to the content standards of the State Board of Education shall be to the content standards that are contained in Title 94, Nebraska Administrative Code, Chapters 1 through 4 (94 NAC 1-4).
Notwithstanding the voluntary nature of the content standard regulations, the State Board is required by statute to implement a statewide assessment program. "The State Board of Education shall implement a statewide assessment program for students in a selected grade in each of the grade ranges four through six, seven through nine, and ten through twelve each fall semester beginning with the fall semester of 2000." Neb. Rev. Stat. § 79-760(1) (Cum. Supp. 1998).
The assessment program, other than the writing assessment, must be purchased from an assessment service and encompasses the same subjects as the content standard regulations. "The assessment program shall consist of one assessment purchased from an assessment service for each selected grade which tests students in the areas of mathematics, reading, science, and social studies, plus one writing assessment, either developed within the state by educators with expertise in writing assessment or purchased as part of the assessment for the other specified subjects."
Section 79-760 identifies five purposes for implementation of the statewide assessment program. They are:
 (a) Evaluate whether or not students in a school system have acquired skills and knowledge which allow them to meet or exceed academic standards established by the state board;
 (b) Measure progress of students in a school system toward meeting academic standards established by the state board.
 (c) Provide information for analysis of adopted standards and consideration of new standards;
 (d) Allow comparisons to be made between the academic achievement of students in a local system and students in another Nebraska local system; and
 (e) Allow comparisons to be made between the academic achievement of Nebraska students with the academic achievement of students in other states.
Neb. Rev. Stat. § 79-760(2) (Cum. Supp. 1998).
Public schools are statutorily required to participate in the Department's assessment program. "All public school districts shall participate in the assessment, and all students enrolled in the designated grade levels in such districts shall be assessed except as provided in this subsection." Neb. Rev. Stat. §79-760(3) (Cum. Supp. 1998).
Public schools are also statutorily required to report their aggregate results from the assessment program, but are not allowed to publish individual assessment scores.
 The individual assessment scores shall be confidential, shall be reported to the school district for educational purposes, and shall not be reported to the State Department of Education. Aggregate results for each school district shall be reported to the department by the assessment service and writing assessment scorers. School districts may also make aggregate data available based on attendance centers.
Neb. Rev. Stat. § 79-760(4).
Finally, the Department bears the responsibility for the scoring. "The department shall be responsible for the cost of assessment materials and scoring." Neb. Rev. Stat. § 79-760(5) (Cum. Supp. 1998).
 Analysis
The first issue in your letter is whether it is legal for the State Board to tell schools that academic standards are optional, then mandate the testing of those standards. It is not only appropriate, but necessary, that the State Board tell school districts that adoption of the content standard regulations is voluntary. Their voluntary nature is stated in § 001.02 of all four regulations, and the approval of these regulations by this office was conditioned upon the Department's use of them as voluntary guidelines. It is also appropriate for the State Board to mandate testing of academic standards to fulfill its obligations under § 79-760 requiring it to implement a statewide assessment program each fall semester beginning with the fall semester of the year 2000.
It is not appropriate, however, for the State Board to mandate the testing of unconstitutionally vague standards. "The established test for vagueness in a statute is whether it either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application." Cunningham v.Lutjeharms, 231 Neb. 756, 763, 437 N.W.2d 806, 812 (1989). "A statute will not be deemed vague if it uses ordinary terms which find adequate interpretation in common usage and understanding. . . ." State v. Schmailzl, 243 Neb. 734, 736-737, 502 N.W.2d 463,465 (1993).
Section 79-760 provides details on the assessment program. Section 79-760(1) states that the assessment for mathematics, reading, science and social studies is purchased from an assessment service. Section 79-760(2) states that the assessment program measures the academic standards established by the State Board. Therefore, the assessment program purchased from the assessment service must test students based on the State Board's four content standard regulations in the areas of mathematics, reading, science and social studies.
It would be difficult, if not impossible, to use vague standards to accomplish the purposes stated in § 79-760(2). How is "a specified degree of accuracy and precision" measured for determining whether twelfth grade students can "select and use appropriate measuring units, tools, and/or technology to achieve a specified degree of accuracy and precision"? 94 NAC 1-006.03A. What does it mean when twelfth grade students should be able to "formulate conclusions based on the interpretation of data represented by the normal distribution"? 94 NAC 1-006.05E. What does it mean when first grade students must read and write "most of the words" they speak and use, and be "responsible" members of the classroom? 94 NAC 2 §§ 003.01A, 003.03A What is "adequate supporting detail"? 94 NAC 2-004.02B, 005.02B. By requiring school districts to test its students on the content standard regulations is to raise the standards from the level of "suggestive guidelines" to "enforceable provisions" which is contrary to the restrictions this office placed upon its approval of these regulations.
Your next concern is whether it is legal for the State Board to impose sanctions or rewards for not achieving or exceeding the content standard regulations. In the third paragraph of your letter, you ask whether it would be legal to impose sanctions or rewards if the standards were mandatory rather than voluntary. These two issues will be considered together. It is difficult to evaluate the legality of State Board action regarding sanctions or rewards for not achieving or exceeding the standards set forth in the content standard regulations without more detail as to the specific sanction or reward. As long as the standards are voluntary, the State Board cannot take any action which would compromise their voluntary nature. We have found nothing in the Nebraska Constitution or state statutes, including § 79-760, which authorizes the State Board to impose sanctions or rewards for not achieving or exceeding any kind of content standard regulations.
The legality of State Board action, however, could also depend on how "sanction" or "reward" is defined. It may be possible to revise the content standard regulations so that the vague language is removed and incorporate the "revised" language into a different regulation where compliance would be mandatory. Noncompliance with the regulation could impact the school district in a manner which could be viewed as a sanction. For example, school districts can be denied accreditation for noncompliance with Rule 10. If it was appropriate within the statutory framework for accreditation of school districts to place within Rule 10 the substance of the content standard regulations, then implementation of this revised rule could result in school districts being denied accreditation for noncompliance with the content standards as set forth in the revised Rule 10. Under the current statutory framework, school systems may forgo quality education incentive payments as provided in Neb. Rev. Stat. §79-758 (Supp. 1999) by not adopting the content standard regulations or more rigorous academic standards. See Neb. Rev. Stat. § 79-758 (Supp. 1999). Receiving or losing quality education incentive payments due to § 79-758 is not the same as sanctions or rewards imposed by the State Board for not achieving or exceeding the content standard regulations.
The next issue you raise in your letter is whether it is legal for the State Board to require school districts to report, on published report cards, their progress regarding the content standard regulations and assessment of those standards. You also ask, in the third paragraph of your letter, whether it would make a difference in our analysis if these standards were mandatory rather than voluntary. These two questions will be considered together. It is legal for the Board to require such reporting, regardless of whether the content standard regulations are voluntary or mandatory, as long as it is done in compliance with §79-760. School districts are not only required to participate in the Department's assessment program established pursuant to §79-760, but they also must report their aggregate results. School districts are not allowed, however, to publish individual assessment scores. See Neb. Rev. Stat. § 79-760(3)-(4) (Cum. Supp. 1998).
 Conclusion
The four content standard regulations are intended to be used as voluntary guidelines. The Attorney General's office conditioned its approval of these regulations on their use as voluntary guidelines only. This office concluded that many of the provisions would likely fail as unconstitutionally vague if they were intended as enforceable provisions. The Department of Education cannot circumvent the voluntary nature of the content standard regulations by requiring school districts to test its students on these standards for purposes of satisfying the Department's obligations set forth in Neb. Rev. Stat. § 79-760
(1998 Cum. Supp.). By requiring school districts to test its students on the content standard regulations is to elevate the regulations from suggestive guidelines to enforceable provisions. The State Board is not constitutionally or statutorily authorized to impose sanctions or rewards for not achieving or exceeding the content standard regulations. It is possible, however, for the State Board to remove the unconstitutionally vague language from these regulations and place that language within a different regulation where compliance with the regulation would be mandatory.
Sincerely,
 DON STENBERG Attorney General
 Charlotte R. Koranda Assistant Attorney General
Approved: _________________________ Attorney General