STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR, V.
MERRITT E. JAMES, RESPONDENT.
673 N.W.2d 214

Filed January 9, 2004.    No. S-02-1010.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

Merritt E. James, pro se.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

The Counsel for Discipline filed formal charges against respondent Merritt E. James. After a formal hearing, the referee concluded that James had violated the Code of Professional Responsibility and recommended a suspension of 30 days. For the reasons stated below, we suspend James from the practice of law for 90 days.

## FACTUAL AND PROCEDURAL BACKGROUND

James was admitted as a member of the Nebraska State Bar Association on June 22, 1964, and is currently engaged in private practice in Lincoln, Nebraska. This action concerns two grievances that were filed against James; the first arose from James' representation of Jacqueline Bradley (Bradley) and the second from James' representation of Daniel Kouba.

### REPRESENTATION OF JACQUELINE BRADLEY

On April 5, 1996, Bradley was injured at a Shopko store in Lincoln when boxes of card tables fell from a shelf and landed on her head and neck. Although Bradley continued to shop after the accident, she did file a report with Shopko before leaving the premises. On April 29, Bradley retained James, under a contingent

fee arrangement, to represent her in a claim for damages against Shopko. Bradley was familiar with James because he had previously represented her in a personal injury case.

During her initial meeting with James, Bradley described the events of the accident and the nature of her injuries. Bradley provided James with the name of Shopko's insurance company, as well as the name and telephone number of the assigned insurance adjuster. Bradley also told James that two women had witnessed the injury, but that she did not know the witnesses or how to reach them.

On May 30, 1996, James visited the Shopko store with Bradley. James did not visit with any Shopko employees during his time at the store. On the same day, James took Bradley's statement regarding the accident. James advised Bradley to continue her medical care until she reached full recovery and to contact him thereafter. James stated that this had been the procedure he followed during the handling of Bradley's prior claim.

After the meeting, James did not contact Shopko to see if there was an accident report, nor did he make an attempt to locate the witnesses to the accident or contact Shopko's insurance company. James did not meet with Bradley again until January 18, 1999. During this meeting, Bradley informed James that she was nearing the end of her medical treatment.

After meeting with Bradley on January 18, 1999, James contacted Bradley's medical providers to gather her medical records. James also requested that Bradley provide him with documentation from her employer in order to verify lost wages. After receiving and reviewing Bradley's medical records, James took no additional steps regarding her claim until November, when he met with Bradley to discuss her case.

At the November 1999 meeting, Bradley told James that she had been diagnosed with lung cancer, but that it was not terminal. During that meeting, James again requested that Bradley provide him with documentation concerning her lost wages so that he could prepare a demand letter to Shopko's insurer. After this meeting, James took no further steps regarding the case, nor did he hear from Bradley. Over 3 years had passed since James had first met with Bradley to discuss the accident.

Bradley died on January 27, 2000. James learned of her death a few days later while skimming through the obituary section of the local newspaper. After learning of Bradley's death, James did not contact her husband, Craig Bradley (Craig), nor did James attempt to contact any possible personal representative of her estate. The 4-year statute of limitations for Bradley's claim expired on April 5, 2000. Craig attempted to contact James in May, but he was not successful. James contends that he never received any telephone calls or messages from Craig.

On May 22, 2000, Craig's attorney wrote to James requesting an update on Bradley's case. James did not reply to this letter, but he does claim to have called Craig and to have left his name and telephone number on Craig's answering machine. On September 13, 2001, Craig sent a grievance to the Counsel for Discipline, alleging that James refused to update him on the status of Bradley's claim.

## REPRESENTATION OF DANIEL KOUBA

On December 22, 2000, Daniel Kouba hired James, pursuant to a contingent fee agreement, to represent him in a workers' compensation case. Kouba became dissatisfied with James and discharged James as his attorney on February 20, 2002. James contends Kouba's dissatisfaction arose from matters outside of James' control; specifically, an adverse determination by an administrative judge regarding Kouba's unemployment compensation appeal. Kouba, on the other hand, stated in his grievance letter to the Counsel for Discipline that James was providing inadequate representation. In any event, on February 20, Kouba discharged James and specifically instructed James to turn over Kouba's file to his new attorney. James did not acknowledge the discharge, nor did he turn over the file to Kouba's new attorney. On March 28, Kouba filed a grievance against James alleging that James would not deliver Kouba's file to his new attorney.

## FORMAL CHARGES

On September 9, 2002, formal charges were filed against James. The charges alleged that James violated his oath of office as an attorney, the disciplinary rules, and various provisions of the Code of Professional Responsibility. The charges contained

two separate counts. With respect to count I, the representation of Bradley, James was charged with violating Canon 1, DR 1-102(A)(1) and (5), and Canon 6, DR 6-101(A)(3), of the Code of Professional Responsibility. With respect to count II, the representation of Kouba, James was charged with violating DR 1-102(A)(1) and (5) and Canon 9, DR 9-102(B)(4). The aforementioned provisions of the Code of Professional Responsibility state:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(5) Engage in conduct that is prejudicial to the administration of justice. . . .

. . . .

DR 6-101 Failing to Act Competently.

(A) A lawyer shall not:

. . . .

(3) Neglect a legal matter entrusted to him or her.

. . . .

DR 9-102 Preserving Identity of Funds and Property of a Client.

. . . .

(B) A lawyer shall:

. . . .

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

James filed an answer to the charges on October 11. James admitted many of the factual allegations, denied others, and denied any violation of the Code of Professional Responsibility.

A hearing was held before a referee on January 29, 2003, and the referee filed his report on February 19. With respect to count I, the referee concluded that there was clear and convincing evidence that James had violated DR 1-102(A)(1) and (5) and DR 6-101(A)(3). With respect to count II, the referee concluded that there was clear and convincing evidence that James had violated DR 1-102(A)(1) and (5) and DR 9-102(B)(4). As to both counts, the referee determined that James had violated his oath

of office as an attorney. The referee recommended that James be suspended from the practice of law for 30 days. On February 27, James filed exceptions to the referee's report.

## ASSIGNMENTS OF ERROR

James assigns seven errors, more properly restated as three: (1) The evidence was insufficient to establish violations of the Code of Professional Responsibility by clear and convincing evidence, (2) DR 1-102(A)(1) and (5) are unconstitutionally vague and do not comport with due process of law, and (3) the referee's recommendation that James be suspended for 30 days was excessive.

## STANDARD OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee; provided, however, that where the evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. Counsel for Dis. v. Mills, ante* p. 57, 671 N.W.2d 765 (2003).

## ANALYSIS

### SUFFICIENCY OF EVIDENCE

To sustain a charge in a disciplinary proceeding against an attorney, a charge must be established by clear and convincing evidence. *Mills, supra; State ex rel. Counsel for Dis. v. Muia,* 266 Neb. 970, 670 N.W.2d 635 (2003). Violation of a disciplinary rule is a ground for discipline. *Muia, supra.* Generally speaking, James argues that the evidence is insufficient to establish that he violated the Code of Professional Responsibility.

### BRADLEY GRIEVANCE

As to count I, there is clear and convincing evidence that James violated DR 1-102(A)(1) and (5). Neb. Ct. R. of Discipline 9(E) (rev. 2001) states, inter alia, that

> [u]pon receipt of notice of a Grievance from the Counsel for Discipline, the member against whom the Grievance is directed shall prepare and submit to the Counsel for Discipline, in writing, within fifteen working days of

receipt of such notice, an appropriate response to the Grievance, or a response stating that the member refuses to answer substantively and explicitly asserting constitutional or other grounds therefor.

Neb. Ct. R. of Discipline 3(B) (rev. 2001) provides that "[a]cts or omissions by a member . . . which violate . . . provisions of these rules, shall be grounds for discipline . . . ."

James was initially contacted about Craig's grievance on October 3, 2001. In this letter, the Counsel for Discipline notified James that pursuant to rule 9(E), he had 15 working days to send a written response to the allegations and that he would be subject to discipline if he failed to respond. Knowing the potential ramifications of inaction, James chose not to acknowledge the grievance within 15 working days.

The Counsel for Discipline contacted James again on November 16, 2001. James provided a brief written response on November 18, specifically promising to contact the Counsel for Discipline when he returned from a trip on November 27. However, as of February 8, 2002, the Counsel for Discipline had not heard from James. Therefore, on February 8, the Counsel for Discipline requested, via letter, a copy of James' file regarding Bradley's case. Again, James did not reply, and on February 21, the Counsel for Discipline wrote to James again, requesting to see Bradley's file. In response, James telephoned the Counsel for Discipline, stating that he could not find Bradley's file, but that he would continue to look for it. On March 20, the Counsel for Discipline requested an update on the status of Bradley's file. James did not respond to this request.

On June 4, 2002, an Assistant Counsel for Discipline faxed and mailed a letter to James requesting a meeting to discuss Craig's grievance. The letter stated, inter alia, that if James failed to respond, the Counsel for Discipline would request a temporary suspension of his license. The same day, James contacted the Counsel for Discipline to schedule a meeting to discuss Craig's grievance. That meeting took place on June 12, during which James turned over Bradley's file. However, it was not until July 15 that the Counsel for Discipline finally received James' complete written response to the grievance. In other words, it took James over 9 months to fully respond to the

Counsel for Discipline. Such conduct runs afoul of rule 9(E) and clearly violates DR 1-102(A)(1) and (5).

James contends that his conduct should be excused because he could not find Bradley's file and that, therefore, he could not adequately respond to the grievance. This excuse is without merit. If James truly could not find Bradley's file, the proper response to the grievance would have been to notify the Counsel for Discipline of such and to construct a response as best as possible from memory and other available resources. A member of the bar may not, however, simply ignore the Counsel for Discipline.

James also argues that his brief written response, received by the Counsel for Discipline on November 20, 2001, served to stop the clock from running under rule 9(E). This argument is also without merit. As an initial matter, this response was received well after the time limit established by rule 9(E). In addition, it was an incomplete response to the charges contained in Craig's grievance. Moreover, James failed to contact the Counsel for Discipline when he returned to Lincoln, despite an assurance in his letter that he would do so.

As to this last point, James argues that beyond a member's duty to respond to the initial notice of a grievance, there are no guidelines concerning a member's duty to respond to further inquiries on behalf of the Counsel for Discipline. This is incorrect. See, DR 1-102(A)(5); *State ex rel. NSBA v. Simmons*, 259 Neb. 120, 123, 608 N.W.2d 174, 177 (2000) ("a failure to make timely responses to inquiries of the Counsel for Discipline . . . violates ethical canons and disciplinary rules which prohibit conduct prejudicial to the administration of justice"); *State ex rel. NSBA v. Johnston*, 251 Neb. 468, 558 N.W.2d 53 (1997). While we refuse to set a rigid timeline for determining when a response to a followup inquiry is not timely, we conclude that James' failure to answer the repeated inquiries from the Counsel for Discipline was prejudicial to the administration of justice, in violation of DR 1-102(A)(5).

There is also clear and convincing evidence that James violated DR 6-101(A)(3) by neglecting Bradley's personal injury case. Most important to the charge of neglect is that James made no attempt to contact Craig or any possible personal

representative about Bradley's claim prior to the expiration of the statute of limitations.

James argues that he was under no duty to contact Craig or any possible personal representative because (1) the attorney-client relationship ended when Bradley died and (2) he did not, nor did he wish to, represent Craig or the personal representative of the estate. Moreover, James argues that even if he had a duty to contact Bradley's personal representative, no prejudice occurred, because after Bradley's death, there was no witness to the accident and, therefore, her claim was of little or no value to the estate.

■ Generally speaking, an attorney's representation of a client ends, absent an agreement otherwise, upon the death of that client. See, Restatement (Third) of the Law Governing Lawyers § 31(2)(b) (2000); 7 Am. Jur. 2d *Attorneys at Law* § 184 (1997). Thus, for instance, James lacked the authority to file the claim without the approval of Bradley's personal representative. See *Long v. Krause*, 104 Neb. 599, 178 N.W. 188 (1920). However, James was also without authority to decide that it was acceptable to allow Bradley's claim to become time barred without the approval of her personal representative. In other words, even after Bradley's death, James had an affirmative duty to protect the claim that she had entrusted to him. See, Restatement, *supra*, § 31, comment *e.*; *id.*, § 33; *id.*, § 33, comment *b*. See, also, Canon 2, EC 2-32 and DR 2-110(2). By failing to alert Craig or the personal representative of the impending expiration of the statute of limitations, James deprived the appropriate decision-maker of the choice to proceed with the claim and thereby deprived the estate of a potential asset. Such conduct constitutes neglect and establishes a violation of DR 6-101(A)(3).

## KOUBA GRIEVANCE

In regard to count II, there is clear and convincing evidence that James violated DR 1-102(A)(1) and (5). James was initially notified by the Counsel for Discipline of Kouba's grievance on April 3, 2002. James was directed to provide an appropriate response within 15 working days and was notified that by failing to do so, he would be subject to discipline. On April 4, James

turned over Kouba's file to Kouba's new attorney; however, James failed to file a response with the Counsel for Discipline.

The Counsel for Discipline wrote to James on April 25, 2002, and again on May 8, requesting a response to the grievance. However, it was not until June 4, when the Assistant Counsel for Discipline threatened to request a temporary suspension of his license, that James telephoned to set up a meeting to discuss Kouba's grievance. Moreover, it was not until June 12 that James filed his written response to Kouba's grievance. By failing to respond to the grievance within 15 days of the notification and failing to timely respond to the repeated inquiries from the Counsel for Discipline, James violated DR 1-102(A)(1) and (5).

In addition, there is clear and convincing evidence that James violated DR 9-102(B)(4) by failing to promptly turn over Kouba's file to his new attorney. On February 20, 2002, Kouba discharged James and instructed James to deliver Kouba's file to his new attorney. James, however, did not deliver Kouba's file until April 4, which was 1 day after James received written correspondence from the Counsel for Discipline regarding the Kouba grievance.

James contends that Kouba was not prejudiced by his inaction and that, therefore, no discipline should spring from his delayed response. James' argument is without merit. Although it may be true that the delayed delivery of Kouba's file did not prejudice Kouba's claim, it hardly excuses James' conduct or justifies his inaction. The more relevant question is whether James failed to "promptly" turn over Kouba's file by retaining it for more than 6 weeks after it was requested by Kouba. Here we draw guidance from *In re Hunter*, 163 Vt. 599, 656 A.2d 203 (1994), where the Supreme Court of Vermont determined that an attorney who retained a client's file for over 2 months after it was requested by the client violated DR 9-102(B)(4). See, also, *State ex rel. Counsel for Dis. v. Rasmussen*, 266 Neb. 100, 662 N.W.2d 556 (2003) (attorney violated DR 9-102(B)(4) by waiting several months to return unused portion of retainer to client despite repeated requests from client and Counsel for Discipline). We conclude that under these circumstances, a delay of more than 6 weeks was dilatory and constitutes a violation of DR 9-102(B)(4).

## DUE PROCESS

James also contends that DR 1-102(A)(1) and (5) are unconstitutionally vague and do not comport with due process of law. However, James' argument is based solely on the claim that rule 9(E) is vague. Specifically, James argues that rule 9(E) fails to provide (1) members of the bar with adequate notice as to what conduct is prohibited and (2) the Counsel for Discipline with adequate standards to prevent arbitrary enforcement.

James' argument is without merit. We have previously stated that a statute is vague only if " 'it either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application.' " *State ex rel. NSBA v. Kirshen*, 232 Neb. 445, 455, 441 N.W.2d 161, 168 (1989), quoting *Cunningham v. Lutjeharms*, 231 Neb. 756, 437 N.W.2d 806 (1989).

In *Kirshen, supra,* an attorney failed to timely respond to the Counsel for Discipline in violation of rule 9(E) and was charged with violating DR 1-102(A)(1) and (6). We determined that DR 1-102(A)(6) was not vague because a reasonable attorney would understand that violating rule 9(E) would constitute conduct that adversely reflected the fitness to practice law. Likewise, here, we conclude that a reasonable attorney would understand that rule 9(E) requires that upon receiving a grievance from the Counsel for Discipline, he or she has 15 working days to submit either a substantive response to the grievance or a response stating that the member refuses to substantively respond and the reason therefor.

Similarly, we believe that adequate standards are in place to ensure that rule 9(E) is not arbitrarily enforced by the Counsel for Discipline. Rule 3(B) clearly states that a violation of the disciplinary rules "shall be grounds for discipline." In other words, by failing to respond to a grievance within the time provided by rule 9(E), a member violates the disciplinary code and becomes subject to discipline under rule 3(B). To this, James contends that the Counsel for Discipline does not file charges every time a member fails to respond to a grievance within the time provided by rule 9(E). Although James cites no examples or evidence of this claim, we believe that his assertion merits further discussion.

The disciplinary rules grant the Counsel for Discipline discretion to decide whether reasonable grounds for discipline exist. See rule 9. If so, the Counsel for Discipline is to forward a complaint to the Committee on Inquiry, from which an inquiry panel is authorized to (1) dismiss the complaint, (2) issue a reprimand, or (3) direct the Counsel for Discipline to file formal charges. See rule 9(H). While no specific guidelines exist as to what action either the Counsel for Discipline or the inquiry panel must take, each of their actions is based on whether "reasonable grounds" for discipline exist. See rule 9. Moreover, it is obvious that their decisions are informed by considerations in the disciplinary rules, the Code of Professional Responsibility, relevant case law, and other practical factors peculiar to each case. We believe that these factors and guidelines afford sufficient legal guidance to obviate the danger of arbitrary or discriminatory enforcement. See *Myers v. Mississippi State Bar*, 480 So. 2d 1080 (Miss. 1985).

Furthermore, James' argument is largely predicated on the claim that he has been singled out for prosecution while numerous other violators of rule 9(E) have gone unpunished. We conclude that this argument is akin to a defense based on selective prosecution. Discussing selective prosecution in another context, we have stated:

> The general rule regarding prosecutorial discretion in law enforcement is that, unless there is proof that a particular prosecution was motivated by an unjustifiable standard based, for example, on race or religion, the use of such discretion does not violate constitutional protections. . . . This means that in order to establish arbitrary discrimination inimical to constitutional equality, there must be more than an intentional and repeated failure to enforce legislation against others as it is sought to be enforced against the person claiming discrimination. . . . Also, there must be more than a showing that a law or ordinance has not been enforced against others and that it is sought to be enforced against the person claiming discrimination. . . . To support a defense of selective or discriminatory prosecution, the defendant must show not only that others similarly situated have not been prosecuted but that the selection of the

defendant for prosecution has been invidious or in bad faith, based upon considerations such as race, religion, or the desire to prevent his exercise of his constitutional rights. (Citations omitted.) *State v. Katzman*, 228 Neb. 851, 855, 424 N.W.2d 852, 856 (1988). James has not attempted to satisfy the aforementioned evidentiary burden, and therefore, we conclude that his assertions of selective prosecution are without merit.

## DISCIPLINE

As noted above, the referee recommended that James be suspended from the practice of law for 30 days. James argues that this recommendation is excessive and that if discipline is necessary, it should come in the form of a reprimand.

We have stated that " '[t]he basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances.' " *State ex rel. NSBA v. Frank*, 262 Neb. 299, 304, 631 N.W.2d 485, 490 (2001), quoting *State ex rel. NSBA v. Brown*, 251 Neb. 815, 560 N.W.2d 123 (1997). Neb. Ct. R. of Discipline 4 (rev. 2001) provides that the following may be considered by this court as sanctions for attorney misconduct: (1) disbarment; (2) suspension for a fixed period of time; (3) probation in lieu of suspension, on such terms as the court may designate; (4) censure and reprimand; or (5) temporary suspension. *State ex rel. Counsel for Dis. v. Mills, ante* p. 57, 671 N.W.2d 765 (2003).

With respect to the imposition of attorney discipline in an individual case, we have stated that " '[e]ach case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case.' " *Frank*, 262 Neb. at 304, 631 N.W.2d at 490, quoting *State ex rel. NSBA v. Rothery*, 260 Neb. 762, 619 N.W.2d 590 (2000). For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding. *Frank, supra; State ex rel. NSBA v. Freese*, 259 Neb. 530, 611 N.W.2d 80 (2000).

To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar

as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *Mills, supra.*

The evidence in the present case establishes that James violated his oath of office as an attorney, engaged in conduct prejudicial to the administration of justice, neglected a legal matter entrusted to him, and failed to promptly deliver client property. The propriety of a disciplinary sanction must be considered with reference to the sanctions imposed by this court in prior cases presenting similar circumstances. *State ex rel. NSBA v. Gallner,* 263 Neb. 135, 638 N.W.2d 819 (2002).

We believe the case of *State ex rel. NSBA v. Mefferd,* 258 Neb. 616, 604 N.W.2d 839 (2000), presents a more serious but factually similar situation to that currently before us. In *Mefferd,* counsel was charged with disciplinary violations stemming from his representation of two different clients. With respect to the first client, counsel was charged with failing to return an overpayment and failing to timely respond to the grievance forwarded by the Counsel for Discipline. With respect to the second client, counsel was charged with neglect of a legal matter and failing to timely respond to the grievance forwarded by the Counsel for Discipline. We determined that counsel violated DR 1-102(A)(1), (5), and (6); DR 6-101(A)(3); and DR 9-102(B)(4), and suspended him from the practice of law for 1 year.

Furthermore, we view an attorney's failure to respond to inquiries and requests for information from the office of the Counsel for Discipline as a grave matter and as a threat to the credibility of attorney disciplinary proceedings. "The disciplinary process as a whole must function effectively in order for the public to have confidence in the integrity of the profession and to be protected from unscrupulous acts." *Mefferd,* 258 Neb. at 626, 604 N.W.2d at 847.

James' initial refusal to respond to repeated inquiries from the Counsel for Discipline demonstrates nothing less than a total "disrespect for our disciplinary jurisdiction and [a] lack of concern for the protection of the public, the profession, and the administration of justice." See *State ex rel. NSBA v. Kirshen,* 232 Neb. 445, 473, 441 N.W.2d 161, 178 (1989). The Counsel for Discipline should not be forced to threaten an attorney with the

suspension of his or her license in order to get him or her to respond to requests for information.

We also note that this action is not James' first encounter with the disciplinary rules of this state. In 1981, we concluded that James' failure to use a trust account for a client's funds and to promptly transmit a client's funds to the client constituted unprofessional conduct and warranted a public reprimand. See *State ex rel. Nebraska State Bar Assn. v. James,* 209 Neb. 306, 307 N.W.2d 524 (1981). James was also given a private reprimand in December 2000 for violating DR 1-102(A)(1), DR 2-110(B)(3), and DR 6-101(A)(3).

▮ Lastly, the determination of an appropriate penalty to be imposed on an attorney requires consideration of any mitigating factors. *Gallner, supra.* The Counsel for Discipline admits that James was respectful and honest throughout these proceedings, and both the referee and the Counsel for Discipline agree that James is fit for the continued practice of law. However, when viewed through the prism of the overall disrespect James has shown for this court's disciplinary proceedings, the nature of the current violations, and James' prior disciplinary violations, his conduct merits more than the 30-day suspension recommended by the referee.

## CONCLUSION

It is, therefore, the judgment of this court that James should be and is hereby suspended from the practice of law for 90 days, and we therefore order him suspended from the practice of law for a period of 90 days, effective immediately, after which period James may apply for reinstatement. James is directed to comply with Neb. Ct. R. of Discipline 16 (rev. 2001), and upon failure to do so, he shall be subject to punishment for contempt of this court. James is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 23(B) (rev. 2001).

JUDGMENT OF SUSPENSION.