Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/05/2022 09:08 AM CDT

- 560 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

State of Nebraska ex rel. Counsel for Discipline
of the Nebraska Supreme Court, relator,
v. Dazmi H. Castrejon, respondent.

___ N.W.2d ___

Filed May 13, 2022.    No. S-20-825.

Judgment of suspension.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke,
Papik, and Freudenberg, JJ.

Per Curiam.

## INTRODUCTION

On November 23, 2020, formal charges containing two
counts were filed by the office of the Counsel for Discipline
of the Nebraska Supreme Court, the relator, against Dazmi H.
Castrejon, the respondent. The respondent filed an answer to
the formal charges on January 6, 2021. This court appointed
a referee who conducted a hearing. At the hearing, the parties
offered a joint statement of facts and agreed on the record that
the violations alleged in the formal charges were not disputed
and that the only contested issue was appropriate discipline.

The referee filed a report on January 31, 2022. With respect
to the allegations contained in the formal charges, the referee
concluded that the respondent's conduct breached the follow-
ing provisions of the Nebraska Rules of Professional Conduct:
Neb. Ct. R. of Prof. Cond. §§ 3-501.5(a) (fees and account-
ing), 3-501.15 (safekeeping funds), 3-508.1(b) (unresponsive-
ness in disciplinary matters), and 3-508.4(a) to (c) (rev. 2016)
(misconduct). The referee further found that the respondent

- 561 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

had violated her oath of office as an attorney licensed to practice law in the State of Nebraska. See Neb. Rev. Stat. § 7-104 (Reissue 2012). With respect to the discipline to be imposed, the referee recommended suspension of the respondent's license to practice law for a period of 2 years, followed by a period of probation or supervision. The relator moved for judgment on the pleadings under Neb. Ct. R. § 3-310(L) (rev. 2019) of the disciplinary rules. We grant the motion for judgment on the pleadings and impose discipline as indicated below.

## FACTS

*Background.*

The respondent was admitted to the practice of law in the State of Nebraska on January 24, 2011. The respondent worked for another attorney for approximately 2 years after her admission to practice, and thereafter, she maintained her own law practice as a solo practitioner under the name "Castrejon Law Office." Beginning in 2018, the respondent practiced with another attorney, Erika Buenrostro, as a firm entitled "Castrejon & Buenrostro, LLC." At all times relevant to these proceedings, she had engaged in the practice of law in Omaha, Nebraska.

*Grounds for Attorney Discipline.*

The violations arise from the respondent's improprieties in managing her Interest on Lawyers Trust Account (IOLTA), her failure to provide an adequate accounting for fees to a former client, and her delays in responding to inquiries from the relator relating to these matters.

*Procedural History.*

Between January 2017 and September 2019, the relator received four separate overdraft notifications regarding the respondent's IOLTA. With each overdraft, the relator asked the respondent for an explanation, and in September 2019, the relator subpoenaed the respondent's bank record for her

- 562 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

Castrejon Law Office IOLTA. After the respondent failed to adequately respond to the relator's requests for explanations regarding the transfers of money from her business and personal checking accounts into her Castrejon Law Office IOLTA, the relator upgraded the matter to a formal grievance. The respondent submitted a written response to the formal grievance as follows:

- I will clarify that the IOLTA account was only intended to hold client money that is used to pay immigration filing fees until they are needed.
- Our office charges flat fees, and per our understanding of the ethics and rules of conduct, flat fees can be deposited into the regular business operating account upon receipt.
- I began falling behind on filing my personal federal tax returns with the IRS and as a result of this, started receiving letters and notices from them, including notices of possible levies.
- I did not know how to handle the situation appropriately and instead of seeking help or taking appropriate measures to resolve the situation, I instead panicked and withdrew into myself by trying to avoid the situation.
- However, I still wanted to ensure that I would be able to have some cash flow for the business and for paying staff payroll in the event that levies would be implemented.
- So, I would make the regular deposits into my business checking account, but not knowing when those accounts would be levied upon, I started transferring money from my business checking account into my IOLTA account as "safekeeping" knowing that if it was there it would not be subject to any levies.
- Thus, while I continued to use the IOLTA account as it was intended for, making appropriate deposits and withdrawals for client filing fees, I did start also using

- 563 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

it to keep regular business income in it and then transferring it back as needed.
• I knew that my actions were wrong and inappropriate.
• When I jointly opened Castrejon & Buensotro, LLC in 2008, it was with the intention of phasing out Castrejon Law Office.
• My partner Erika Buenrostro manages all accounts for Castrejon & Buenrostro LLC[,] and I manage the Castrejon Law Office accounts. We do not have joint access to these accounts.
• The Castrejon Law Office IOLTA has now been phased out in its entirety, meaning, there is no more client money that needs to be drawn from it, and no more money will be deposited into it.
• All client filing fees from this point forward are being processed through the Castrejon & Buenrostro IOLTA account which I do not have access to.

On March 18, 2020, we temporarily suspended the respondent's license to practice law. The respondent's IOLTA was also closed in March 2020.

On April 1, 2020, the relator received a written grievance from a former client of the respondent, alleging that the respondent had charged $3,500 for assistance with an "I-130" immigration-related application, that the former client had requested an accounting of services and a refund of any unused funds, and that the client received a refund of $636 without an accounting of work done. The respondent failed to respond to the former client, to the grievance letter, and to a formal complaint to the respondent's last known address. The respondent had not reported to the relator or "Attorney Services" of a change in her mailing address or contact information. After several attempts to contact the respondent, the relator amended the formal complaint and sent the new complaint to the respondent's updated address.

Formal charges were filed on November 23, 2020, and on January 6, 2021, the respondent filed an answer. She

- 564 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

admitted that she used her IOLTA to shield money from the Internal Revenue Service's levy attempts, placing client money at risk for seizure; that she deposited funds into the Castrejon Law Office IOLTA greater than necessary to pay bank service charges on that account; that she deposited funds that were not connected with the representation of a client; and that she commingled her funds with client funds. With respect to the former client, she admitted that she failed to provide a full accounting of services she had provided. She admitted that she failed to cooperate with the formal investigation and did not provide any of the requested information to the relator.

*Referee's Report.*

The referee held a hearing at which the respondent testified and evidence was adduced. The parties stipulated to a joint statement of facts, in which the respondent admitted the formal charges and allegations of her actions and misconduct as proved. The only contested issue at the hearing was the question of appropriate discipline. In the January 31, 2022, report, the referee found that by clear and convincing evidence, through the respondent's conduct, the respondent had breached provisions of the Nebraska Rules of Professional Conduct as follows: §§ 3-501.5(a) (fees and accounting), 3-501.15 (safekeeping funds), 3-508.1(b) (unresponsiveness in disciplinary matters), and 3-508.4(a) to (c) (misconduct). The referee further found that with regard to each of the counts enumerated above, the respondent had violated her oath of office as an attorney licensed to practice law in the State of Nebraska. See § 7-104.

The record upon which the referee found violations was based on extensive exhibits and testimony from the respondent and her therapist. Morgan Keen Hecht, a licensed independent mental health practitioner and licensed certified social worker, offered expert testimony concerning domestic abuse, domestic violence, and coercive control, and she described her treatment of the respondent from December 2020 to the

- 565 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

time of the hearing. Hecht and the respondent had met on average twice per month. Hecht testified to the "Power and Control Wheel of Violence," which addresses both physical and sexual violence and is divided into eight criteria and is applicable regardless of the gender of the person exercising power and control. Hecht testified that all of the following indicia were present with the respondent's relationship with her ex-husband: (1) using intimidation; (2) using emotional abuse; (3) using isolation; (4) minimizing, denying, or blaming; (5) using children; (6) using male privilege; (7) using economic abuse; and (8) using coercion and threats. Hecht related a series of traumas the respondent had experienced over the course of her life starting in her childhood, which traumas included sexual assault and her marriage to her abusive husband at age 16. The respondent gave birth to her older daughter when the respondent was 17 years old. The respondent's ex-husband became increasingly abusive, and the escalating demands began to overwhelm the respondent "to the point of being actually immobilized at some point and not able to use what we know are the intellectual and emotional capacity that she actually has." This was exacerbated when the ex-husband became physically violent toward the couple's older daughter, and the respondent was alerted that he might be sexually inappropriate toward the older daughter.

Hecht testified that the respondent had described the situation within the family as escalating to crisis proportions by 2015. The husband's business failed, and the family lost about $25,000. The respondent was unable to keep up economically, she was not handling her professional financial responsibilities, and the Internal Revenue Service had become involved. She did not share this with her husband, because she feared "abuse or worse." Because of the abuse and isolation, the respondent had no family or close confidant in which she could confide.

In 2019, the respondent was teaching the older daughter how to drive an automobile; her ex-husband found out and

- 566 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

flew into a rage. The ex-husband attacked and threatened to kill the daughter, the respondent, and himself. The younger daughter, in fear, called the police, but the police took no further action after defusing the matter on scene. A month later, the husband had "another violent temper tantrum," and the respondent fled from the house with the younger daughter, went to a park, and told her husband she was calling the police. When the respondent and younger daughter returned home, the husband was gone, and he never returned. The respondent had described her husband's abandonment as "number one crisis and loss in her life." Hecht testified that as of this event, the respondent was devastated and became nonfunctional for a period of months. She also lost her law license, and this was followed by extreme financial problems and economic privation.

Hecht diagnosed the respondent with post-traumatic stress disorder and "major depressive episode with severe anxious distress." Based on Hecht's testimony, the referee found that a person so afflicted would be incapable of functioning as a lawyer. Hecht opined that the respondent should continue in therapy for about 1 year beyond the time of the hearing. She testified that based on her interactions with the respondent, the respondent was clearly aware that the conduct which resulted in the formal charges was clearly wrong and a violation of the lawyer's ethical code. She testified that she observed that the respondent is a highly intelligent and ethical human being with the "capacity to live out high ethics."

The referee found that the testimony of the respondent and Hecht was truthful and accurate. The referee further found that the extreme mental and emotional distress of the respondent, as well as the disability resulting from it, existed throughout the entire period of her conduct that was the basis for the formal charges. After reviewing the factors for discipline, the referee emphasized the "extraordinary circumstances in this case" and found that a suspension with the possibility of a return to practice if and when the Supreme Court deems

- 567 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

appropriate was in the public interest. The referee found that because the respondent was a victim of domestic violence, her trauma and mental health were substantial mitigating factors, and he noted that the respondent had voluntarily and in good faith sought professional mental health treatment. The referee noted with respect to her rehabilitative potential that

> the Respondent could endure a lifetime of physical and sexual violence beginning at the age of five (5) and continuing for over more than two decades, while at the same time completing her high school, college[,] and law school educations, maintaining a household and raising two children, is a remarkable and unique testament to her extraordinary qualities as a human being.

The referee recommended suspension of the respondent's license to practice law for a period of 2 years, with credit for the time since she surrendered her license to practice law, followed by a period of probation or supervision. The referee recommended that the respondent be ordered to complete her current treatment with Hecht and that she remain in therapy with a licensed professional through the balance of her supervision.

## STANDARD OF REVIEW

Because attorney discipline cases are original proceedings before this court, we review a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings. *State ex rel. Counsel for Dis. v. Trembly*, 300 Neb. 195, 912 N.W.2d 764 (2018).

## ANALYSIS

A proceeding to discipline an attorney is a trial de novo on the record. *State ex. rel. Counsel for Dis. v. Wolfe*, 301 Neb. 117, 918 N.W.2d 244 (2018). To sustain a charge in a disciplinary proceeding against an attorney, a charge must be established by clear and convincing evidence. *Id*. Violation of a disciplinary rule concerning the practice of law is a ground for discipline. *Id*.

- 568 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

Based on the record and the undisputed findings of the referee, we find that the above-referenced facts have been established by clear and convincing evidence. Based on the foregoing evidence, we conclude that by virtue of the respondent's conduct, the respondent has violated §§ 3-501.5(a), 3-501.15, 3-508.1(b), and 3-508.4(a) to (c). We specifically conclude that the respondent has violated her oath of office as an attorney, see § 7-104. Accordingly, we grant the joint motion for judgment on the pleadings.

We have stated that the basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances. *State ex. rel. Counsel for Dis. v. Wolfe, supra*. Neb. Ct. R. § 3-304 of the disciplinary rules provides that the following may be considered as discipline for attorney misconduct:

(A) Misconduct shall be grounds for:

(1) Disbarment by the Court; or

(2) Suspension by the Court; or

(3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or

(4) Censure and reprimand by the Court; or

(5) Temporary suspension by the Court; or

(6) Private reprimand by the Committee on Inquiry or Disciplinary Review Board.

(B) The Court may, in its discretion, impose one or more of the disciplinary sanctions set forth above.

See, also, § 3-310(N).

With respect to the imposition of attorney discipline in an individual case, we evaluate each attorney discipline case in light of its particular facts and circumstances. *State ex rel. Counsel for Dis. v. Wolfe, supra*. For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors. *Id.*

- 569 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *Id.*

The evidence in the present case establishes that there were several types of misconduct, including that the respondent deposited her own funds into her IOLTA to avoid levy by the Internal Revenue Service, failed to respond to the relator's investigations and requests for information, and failed to provide an accounting to a former client.

Mishandling of trust accounts is one of the most serious violations of professional responsibility, and it must be deterred. Absent mitigating circumstances, the appropriate sanction is disbarment. S*tate ex rel. Counsel for Dis. v. Council*, 289 Neb. 33, 853 N.W.2d 844 (2014) (noting that we have disbarred numerous attorneys for the misappropriation of client funds). "Mitigating factors may 'overcome the presumption of disbarment in misappropriation and commingling cases' where they are 'extraordinary' and 'substantially outweigh' any aggravating circumstances." *Id*. at 45, 853 N.W.2d at 853. When an attorney asserts domestic violence as a mitigating factor, the relator has an obligation to investigate and present evidence, if any, regarding the claim. The burden of proof of a mitigating factor is on the attorney.

With respect to the protection of the public, the referee noted that the respondent has demonstrated medical improvement, indicating a repeat of misconduct is extremely unlikely. We note Hecht's extensive testimony regarding the respondent's success in therapy, her commitment to continuing therapy, and the potential for ethical future conduct should the respondent return to the practice of law.

- 570 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

The respondent has admitted wrongdoing and, since her answer to the formal charges, has cooperated with the relator despite her extreme mental and emotional distress. She sought help from professionals for both mental health support and accounting, and she unconditionally agreed to continue in mental health therapy.

Although the respondent's fitness to practice law was significantly impaired, the referee found that the respondent can regain her fitness and capability to practice law.

With respect to mitigating factors, the parties agree that the respondent had no prior disciplinary complaints against her. Several letters of support attested to her work ethic, character, and advocacy on behalf of underrepresented and underserved populations.

We have not previously addressed the role of domestic violence victimization, including intimate partner violence, coercive control, relationship abuse, and sexual violence in attorney ethical breaches. Specifically, we have not considered the role of being a victim of domestic violence serves as a mitigator in attorney discipline. Compare *State ex. rel. Counsel for Dis. v. Thompson*, 264 Neb. 831, 642 N.W.2d 593 (2002) (establishing considerations for mitigation involving mental health issues). In the referee's report, there was no mention of the nascent Nebraska Lawyers Assistance Program's undertaking that assists and supports lawyers, judges, and law students who experience intimate partner violence. Acknowledging the "alarming trend within the legal profession" in reported domestic violence and sexual assaults, the Nebraska Lawyers Assistance Program now provides resources to legal professionals experiencing intimate partner violence. See Chris Aupperle, *Acknowledging Relationship Violence Within the Legal Profession*, Neb. Lawyer, Jan.-Feb. 2022, at 47. Further, in a related area, we note the recent creation of Lancaster County's Safe and Healthy Families Court, a postadjudication court program for families where one of the adjudication issues involved domestic violence.

- 571 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

As it relates to attorneys, the impact of intimate partner violence has been recognized nationwide, and courts have specifically considered such circumstances to be a mitigating factor in attorney discipline. The Supreme Court of Washington stated in *In re Disciplinary Proceeding Against Dornay*, 160 Wash. 2d 671, 687, 161 P.3d 333, 341 (2007), that intimate partner violence did not excuse the attorney's actions, but was "a mitigating factor that merits substantial weight." Oklahoma has addressed similar mitigation issues in several disciplinary matters where the attorney's misconduct correlated with the years of domestic violence and threats of violence by the attorney's abuser or where intimate partner violence contributed to the attorney's extreme emotional distress. See, *State ex. rel. Oklahoma Bar Association v. Levisay*, 2020 OK 86, 474 P.3d 875 (2020); *State ex. rel. Oklahoma Bar Association v. Black*, 2018 OK 85, 432 P.3d 227 (2018); *State ex. rel. Oklahoma Bar Association v. Hastings*, 2017 OK 43, 395 P.3d 552 (2017). In a Georgia disciplinary case, an attorney who admitted that she converted client funds for her own personal use to recover from the financial challenges brought on by her former abusive relationship was found to have done so due to extreme emotional distress stemming from domestic violence. *Matter of Saunders*, 304 Ga. 824, 822 S.E.2d 235 (2018). In such cases, the impact of the intimate partner violence caused mental distress and emotional problems for the attorney and could be considered as a mitigating factor in determining the appropriate discipline.

The record shows that Castrejon's medical evidence established that she was affected by numerous mental and emotional traumas related to sexual assault and domestic partner violence. The testimonial evidence connected her mental and emotional state as a contributing cause of her misconduct. The testimony of Hecht and the respondent demonstrated that the treatment has been successful, that Castrejon is committed to continuing to work on her treatment, and that future misconduct is highly unlikely.

- 572 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

With respect to the discipline to be imposed, the referee recommended suspension of the respondent's license to practice law for a period of 2 years, with credit for her present temporary suspension. We have considered the record, the findings of which have been established by clear and convincing evidence, and the applicable law. Upon due consideration, the court finds extraordinary mitigating factors and finds that a 30-month suspension, retroactive to March 18, 2020, is appropriate.

The respondent shall comply with Neb. Ct. R. § 3-316 (rev. 2014), and upon failure to do so, she shall be subject to punishment for contempt of this court. The respondent is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012), § 3-310(P) and Neb. Ct. R. § 3-323(B) within 60 days after an order imposing costs and expenses, if any, is entered by this court.

At the end of the 30-month suspension, the respondent may apply to be reinstated to the practice of law, provided that she has demonstrated her compliance with § 3-316 and further provided that the relator has not notified this court that the respondent has violated any disciplinary rule during her suspension. Upon reinstatement, the respondent shall complete 2 years of monitored probation. During the period of probation, the respondent will be monitored by an attorney licensed to practice law in the State of Nebraska and approved by the relator. The 2-year monitoring plan shall include, but not be limited to, the following:

(1) The respondent shall continue her current regime of therapy with Hecht, and the respondent will remain in therapy with Hecht or another licensed professional for the balance of her supervision or until such time as her therapist or supervising attorney (see below) jointly agree that ongoing therapy is no longer needed.

(2) The respondent shall be subject to supervision by an appropriate licensed Nebraska attorney for a 2-year period.

- 573 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. CASTREJON
Cite as 311 Neb. 560

(3) The respondent shall not engage in a solo law practice, but, rather, she shall work in a setting with other attorneys.

(4) The respondent shall not have primary responsibility for managing any law firm operating or trust accounts. Any law firm operating or trust account transactions made by the respondent shall be reviewed and approved by her supervising attorney.

(5) The respondent shall complete additional coursework in accounting as directed by her supervising attorney, to ensure the respondent's future compliance with IOLTA requirements.

## CONCLUSION

We find that the respondent violated §§ 3-501.5(a), 3-501.15, 3-508.1(b), and 3-508.4(a) to (c), as well as her oath of office as an attorney, see § 7-104. It is the judgment of this court that the respondent is suspended from the practice of law for a period of 30 months, commencing on the date of temporary suspension, March 18, 2020. Upon completion of the period of suspension and reinstatement to the bar, the respondent shall be placed on monitored probation for 2 years, subject to the terms set forth above.

JUDGMENT OF SUSPENSION.