Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/12/2023 09:06 AM CDT

State of Nebraska ex rel. Counsel for Discipline
of the Nebraska Supreme Court, relator,
v. Bradley A. Sipp, respondent.

___ N.W.2d ___

Filed May 12, 2023.    No. S-21-832.

Original action. Judgment of suspension.

Heavican, C.J., Miller-Lerman, Cassel, Funke, Papik,
and Freudenberg, JJ.

Per Curiam.

## INTRODUCTION

The relator, the Counsel for Discipline of the Nebraska
Supreme Court, filed formal charges against the respondent,
Bradley A. Sipp, alleging that the respondent violated several
provisions of the Nebraska Rules of Professional Conduct.
The respondent admitted to violating Neb. Ct. R. of Prof.
Cond. §§ 3-501.3 (diligence), 3-501.4 (client communica-
tions), 3-508.1 (failure to respond to disciplinary authority),
and 3-508.4(a) (misconduct) (rev. 2016). After a hearing, the
referee found that the respondent also violated Neb. Ct. R. of
Prof. Cond. § 3-501.15(a) and (c) (failure to deposit unearned
fees into trust account and withdraw only as earned). The
referee recommended that the respondent be suspended from
the practice of law in the State of Nebraska for 9 months,
followed by 9 months' monitored probation. The respondent
takes exception to the recommended sanction. We agree with

the referee's recommendation and impose discipline as indicated below.

## BACKGROUND

The respondent was admitted to the practice of law in the State of Nebraska on September 16, 2008. At all times relevant to these proceedings, the respondent was engaged in the private practice of law in Lincoln, Nebraska.

The Counsel for Discipline filed amended formal charges against the respondent on January 10, 2022, arising from his representation of four separate clients between 2019 and 2021. The charges generally alleged neglect of client matters, failure to communicate with clients, failure to timely respond to the Counsel for Discipline, and failure to deposit "advance fees" paid to the respondent by clients into the respondent's trust account.

Ultimately, the respondent admitted to violating §§ 3-501.3, 3-501.4, 3-508.1, and 3-508.4(a). The respondent denied violating § 3-501.15(a) and (c). However, after a hearing, the referee found by clear and convincing evidence that the respondent also violated the rules as to the deposit of unearned fees into a trust account and their withdrawal as earned. The respondent had argued that he earned the "initial [fee] deposits" upon receipt under the terms of the fee agreement and thus could not place them in his trust account without impermissibly commingling his funds with clients' funds. The referee disagreed, finding that the initial deposits were for work yet to be performed and were not earned when given.

The referee recommended that the respondent be suspended from the practice of law in the State of Nebraska for 9 months, followed by 9 months' monitored probation. The referee acknowledged various mitigating factors noted by the Counsel for Discipline, including that the respondent had no prior disciplinary sanctions, eventually cooperated with the Counsel for Discipline, admitted his misconduct and assumed

responsibility for his actions, appears remorseful, refunded the fee deposits of three of the four clients, and apparently has a good reputation in his community. However, the referee took issue with the respondent's claim that "'from this record, all the clients were made whole and their cases resolved to their satisfaction.'" The recommended sanctions were based on the respondent's admitted violations of §§ 3-501.3, 3-501.4, 3-508.1, and 3-508.4(a). The Counsel for Discipline did not seek sanctions for the violations of § 3-501.15(a) and (c), and the referee did not recommend any sanctions for those violations.

## STANDARD OF REVIEW

Because attorney discipline cases are original proceedings before this court, we review a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.[1]

## ANALYSIS

The basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances.[2] In the present case, however, there does not appear to be any dispute as to whether discipline should be imposed. Violation of a disciplinary rule concerning the practice of law is a ground for discipline,[3] and the respondent admitted to violating §§ 3-501.3, 3-501.4, 3-508.1, and 3-508.4(a) and takes no exception to the referee's finding that he violated § 3-501.15(a) and (c). As such, the sole issue is the type of discipline appropriate under the circumstances. The respondent takes

---

[1] *State ex rel. Counsel for Dis. v. Castrejon*, 311 Neb. 560, 973 N.W.2d 701 (2022).

[2] *Id*.

[3] *Id*.

exception to the referee's recommendation of 9 months' suspension, followed by 9 months' monitored probation, on the grounds that it is excessive and based upon factors and conclusions that are not supported by the evidence. Instead, the respondent argues for a public reprimand, term of probation, or 30 days' suspension.

Under Neb. Ct. R. § 3-304, this court may impose one or more of the following disciplinary sanctions: "(1) Disbarment by the Court; or (2) Suspension by the Court; or (3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or (4) Censure and reprimand by the Court; or (5) Temporary suspension by the Court[.]" The goal of attorney discipline proceedings is not as much punishment as a determination of whether it is in the public interest to allow an attorney to keep practicing law.[4] Providing for the protection of the public requires the imposition of an adequate sanction to maintain public confidence in the bar.[5]

To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.[6] Each attorney discipline case must be evaluated in light of its particular facts and circumstances.[7] For purposes of determining the proper discipline of an attorney, we consider the

---

[4] *State ex rel. Counsel for Dis. v. Barfield*, 305 Neb. 79, 938 N.W.2d 863 (2020).

[5] *Id*.

[6] *Castrejon, supra* note 1.

[7] *Id*.

attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors.[8] Furthermore, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.[9]

The evidence in the present case establishes that there were several types of misconduct, including neglect of client matters and failure to communicate with clients. The respondent suggested at oral arguments before this court that he was performing the work but did not inform his clients. However, he admitted to violating both §§ 3-501.3 and 3-501.4, and the record shows multiple instances in which he neglected matters entrusted to him by clients. Notably, despite having been retained by one client in part to settle a debt, the respondent failed to respond to an inquiry from opposing counsel about whether his client was interested in settling, and "at no time thereafter made any attempt to negotiate . . . to settle [the] claim." The respondent also failed to timely submit a brief in that client's appeal. As to another client, the respondent submitted no evidence on her behalf at a contested divorce hearing. And with yet another client, the respondent agreed to seek a pardon, but then stopped communicating with the client and subsequently admitted he had not represented the client with the "'diligence that was necessary.'" In addition, the respondent failed to timely respond to multiple inquiries from the Counsel for Discipline and never provided certain requested documents.

A lawyer who neglects an entrusted matter has failed to act competently and is guilty of unprofessional conduct.[10]

---

[8] *Id.*

[9] *State ex rel. Counsel for Dis. v. Argyrakis*, 305 Neb. 396, 940 N.W.2d 279 (2020).

[10] *State ex rel. NSBA v. Aupperle*, 256 Neb. 953, 594 N.W.2d 602 (1999).

Where there is a pattern of neglect, protection of the public and the maintenance of the reputation of the bar as a whole are of paramount concern.[11] Similarly, responding to disciplinary complaints in an untimely manner and repeatedly ignoring requests for information from the Counsel for Discipline indicate a disrespect for the Supreme Court's disciplinary jurisdiction and a lack of concern for protecting the public, the profession, and the administration of justice.[12]

The referee viewed *State ex rel. Counsel for Dis. v. Gase*[13] as similar in that the respondent there was the subject of three separate grievances generally alleging neglect of client matters and failure to communicate with clients, and the respondent failed to timely respond to the Counsel for Discipline. We suspended the respondent in *Gase* for 1 year, followed by 1 year's monitored probation.[14] The respondent here argues that *Gase* is distinguishable because *Gase* involved a conditional admission,[15] and the record in *Gase* apparently did not include mitigating circumstances or letters or testimonials in favor of the respondent.[16] However, other cases involving multiple instances of neglect of client matters, failure to communicate with clients, and failure to timely respond to the Counsel for Discipline have also resulted in similar sanctions, even though they did not involve conditional admissions

---

[11] *Id*.

[12] *State ex rel. Counsel for Dis. v. Nelson*, 311 Neb. 251, 971 N.W.2d 777 (2022).

[13] *State ex rel. Counsel for Dis. v. Gase*, 283 Neb. 479, 811 N.W.2d 169 (2012).

[14] *Id*.

[15] See, generally, Neb. Ct. R. § 3-313.

[16] But see *State ex rel. NSBA v. Kelly*, 221 Neb. 8, 374 N.W.2d 833 (1985) (evidence of good reputation does not necessarily mitigate proved misconduct).

and even though there was evidence of mitigating circumstances or letters and testimonials.[17]

The respondent also argues that the referee considered certain aggravating factors that were not supported by the record or that overstated the degree of the respondent's misconduct. However, the referee's report makes no reference to aggravating factors. Instead, the referee discusses—and takes issue with—the respondent's view that "'from this record, all the clients were made whole and their cases resolved to their satisfaction'" when discussing mitigating factors.

Relatedly, the respondent argues that the referee "misconstrued [his] position" as to his clients' being made whole and their cases being resolved to their satisfaction.[18] Specifically, the respondent argues that he refunded all unearned fees and that "[his] lack of diligence did not cause additional harm or prejudice in the disposition of [his clients'] case; or at least there was no evidence to establish otherwise."[19] As proof of this, he notes, among other things, that one client had "no defense to the debt she owed."[20] However, we have

---

[17] See, e.g., *State ex rel. Counsel for Dis. v. Wadman*, 275 Neb. 357, 746 N.W.2d 681 (2008) (respondent suspended for 6 months for neglecting two clients' matters, despite mitigating circumstances); *State ex rel. Counsel for Dis. v. Coe*, 271 Neb. 319, 710 N.W.2d 863 (2006) (respondent disbarred for neglecting client matters and failing to respond to Counsel for Discipline, despite mitigating circumstances); *State ex rel. Special Counsel for Dis. v. Fellman*, 267 Neb. 838, 678 N.W.2d 491 (2004) (respondent suspended for 1 year followed by 2 years' probation for violations, including neglecting client's matter in multiple respects and failing to respond to Counsel for Discipline, despite mitigating circumstances and testimonials); *Aupperle, supra* note 10 (respondent suspended indefinitely, with no possibility of reinstatement for 2 years, for violations, including neglecting six separate clients' matters and failing to communicate with various clients, despite mitigating circumstances).

[18] Brief for respondent at 10.

[19] *Id*.

[20] *Id*. at 11.

previously explained that the restitution of funds wrongfully converted by a lawyer, after he or she is faced with legal accountability, is not an exoneration of the lawyer's professional misconduct.[21] Likewise, we have previously recognized that an attorney's neglect, in and of itself, is frustrating and prejudicial for clients.[22]

As to the respondent's failure to deposit clients' "initial fee deposits" into his trust account, the referee found that the respondent violated § 3-501.15(a) and (c). In so finding, the referee determined that the fee agreements the respondent entered into with the four clients in question were hourly fee agreements involving an initial fee deposit against which the respondent agreed to work at a rate of $250 an hour, and other charges would be made against the deposit as they were incurred, as set out in the plain and simple language of the written fee agreements.

We have repeatedly said that advanced fees are payments made by a client for the performance of legal services and belong to the client until earned by the attorney.[23] Nonetheless, because there was "'conflicting information'" about the application of § 3-501.15, the Counsel for Discipline sought no sanction as to the respondent's violations, and the referee

---

[21] *Kelly, supra* note 16.

[22] See *Aupperle, supra* note 10. See, also, *State ex rel. Counsel for Dis. v. Ellis*, 283 Neb. 329, 339, 808 N.W.2d 634, 642 (2012) (attorney's neglect cost client opportunity to pursue claim, regardless of whether claim would have succeeded; alleged lack of prejudice to client from inability to pursue claim "entitled to little weight" as mitigating factor); *State ex rel. Counsel for Dis. v. James*, 267 Neb. 186, 673 N.W.2d 214 (2004) (rejecting claim that even if attorney had duty to contact estate's personal representative, no prejudice occurred as a result of failure to do so, because after decedent's death, there was no witness to accident and decedent's claim was of little or no value).

[23] See, e.g., *State ex rel. Counsel for Dis. v. Crawford*, 285 Neb. 321, 827 N.W.2d 214 (2013); *Fellman, supra* note 17.

recommended none. Neither party took exception to this. When no exceptions to the referee's findings of fact are filed, we may consider the referee's findings final and conclusive.[24] We do so in the instant case.

The Counsel for Discipline invites us to determine whether a lawyer may enter into a fee agreement that allows the lawyer to treat an advance fee payment as earned upon receipt and not deposit any portion thereof into the lawyer's trust account. In making that request, the Counsel for Discipline cites to two seemingly contradictory advisory opinions regarding when an attorney must deposit client fees into the attorney's trust account and when it is permissible to deposit client fees into the attorney's business account.[25] However, the facts of this case do not squarely put this issue before us, and as such, we decline the Counsel for Discipline's invitation.[26]

We also observe that although the formal charges accused the respondent of violating his oath of office,[27] the referee's report is silent on the issue. We find that the evidence clearly and convincingly shows that the respondent violated his oath of office.

Accordingly, upon due consideration and after a de novo review of the record and a balancing of the respondent's offenses with all mitigating factors, the court agrees with the referee's recommendation and concludes that the respondent should be suspended from the practice of law in the State of Nebraska for 9 months, followed by 9 months' monitored probation. The monitor shall be an attorney licensed to

---

[24] *State ex rel. Counsel for Dis. v. Hanson*, 305 Neb. 566, 941 N.W.2d 193 (2020).

[25] See Neb. Ethics Adv. Op. for Lawyers No. 79-3 (1979) and Neb. Ethics Adv. Op. for Lawyers No. 06-2 (2006).

[26] But see ABA Comm. on Ethics & Prof. Responsibility, Formal Op. 505 (2023) (discussing fees paid in advance for contemplated services).

[27] See Neb. Rev. Stat. § 7-104 (Reissue 2022).

practice in the State of Nebraska and shall be approved by the Counsel for Discipline.

Consistent with the referee's recommendation that the respondent be subjected to 9 months' monitored probation like that in *Gase*,[28] the monitoring plan shall include, but not be limited to, the following: (1) The respondent shall provide the monitor with copies of all fee agreements with clients; (2) the respondent shall provide the monitor with a monthly list of cases for which the respondent is currently responsible, which list shall include (a) the date the attorney-client relationship began, (b) the general type of the case, (c) the date of the last contact with the client and the last type and date of the work completed on the file (e.g., pleading, correspondence, document preparation, discovery, court hearing), (d) the next type of work and date that work should be completed on the case, and (e) any applicable statute of limitations and its date; (3) during the first 6 months of probation, the respondent will personally meet with the monitor on a monthly basis to review the case list and the status of the cases; (4) the respondent will review with the monitor his office practices and continue to work to develop efficient office procedures that protect the clients' interests; (5) the monitor shall have the right to contact the respondent with any questions the monitor may have regarding the respondent's then-pending cases; and (6) if at any time the monitor believes the respondent has violated the Nebraska Rules of Professional Conduct or has failed to comply with the terms of probation, the monitor shall report such violation or failure to the Counsel for Discipline.

## CONCLUSION

The respondent is suspended from the practice of law in the State of Nebraska for a period of 9 months, effective

---

[28] See *Gase, supra* note 13.

immediately. Should the respondent apply for reinstatement, his reinstatement shall be conditioned upon his being on probation for a period of 9 months, including monitoring for 9 months following reinstatement, subject to the terms outlined above. The respondent shall comply with Neb. Ct. R. § 3-316 (rev. 2014), and upon failure to do so, he shall be subject to punishment for contempt of this court. The respondent is also directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2022) and Neb. Ct. R. §§ 3-310(P) (rev. 2022) and 3-323(B) within 60 days after the order imposing costs and expenses, if any, is entered by this court.

JUDGMENT OF SUSPENSION.

STACY, J., not participating.